Sheldon LEVINE, Petitioner–Appellant,

v.

COMMISSIONER OF CORRECTIONAL SERVICES, Respondent–Appellee.

No. 75, Docket 93–2803.

United States Court of Appeals, Second Circuit.

Argued Sept. 23, 1994.

Decided Jan. 3, 1995.

Perry S. Reich, Lindenhurst, NY, for petitioner-appellant.

Christine Duisin, Asst. Atty. Gen., New York City (G. Oliver Koppell, Atty. Gen., State of N.Y., Jerry Boone, Edward D. Saslaw, Asst. Attys. Gen., of counsel), for respondent-appellee.

Before: VAN GRAAFEILAND, MINER, and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge:

Sheldon Levine appeals from the dismissal of his petition for a writ of habeas corpus filed in the United States District Court for the Eastern District of New York (Eugene H. Nickerson, *Judge*) pursuant to 28 U.S.C. § 2254. In that petition, Levine raised a double jeopardy claim, two due process claims, and an ineffective assistance of counsel claim. The district court held that, because he had failed to raise it before the New York Court of Appeals, Levine's double jeopardy claim should be dismissed for failure to exhaust state remedies. We agree, and affirm on that basis.

Despite the presence of this indisputably unexhausted claim, the district court went on to consider and reject the first of Levine's two due process claims as well as his ineffective assistance of counsel claim. This, of course, contravenes the teaching of *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). Accordingly, we reach a different resolution of those claims. We agree with the district court, however, that review of Levine's second due process claim is unavailable due to a state procedural bar.

## BACKGROUND

On May 11, 1987, Sheldon Levine pled guilty in the Supreme Court of the State of New York, Suffolk County (Kenneth K. Rohl, *Justice*) to all but one count in a massive 1,004 count indictment charging him with grand larceny, falsification of business records, criminal solicitation, conspiracy, and violations of New York state tax law. The indictment alleged that Levine and his co-defendants stole $35.9 million in tax revenues from New York between 1984 and 1986 by selling gasoline without paying excise and sales taxes.

A plea bargain had been negotiated on the indictment. Integral to the plea was Justice Rohl's agreement to a sentence of two consecutive one-year terms of incarceration, $1 million in restitution "up front" at the time of sentencing, $10 million in total restitution in the form of a confession of judgment, and a stay of the proceeding to impose the sentence until a pending federal indictment

against Levine stemming from the same tax avoidance scheme was resolved. The agreement also provided that if the federal court imposed restitution, there would be a $5 million reduction of the state restitution figure, as well as a $500,000 reduction in the "up front" payment. Although the record is fuzzy, it seems to have been understood that the "up front" money would be paid as soon as possible, but no later than the day the state sentence would be imposed. Finally, the agreement specified that Levine's state prison sentence would run concurrently to any federal prison sentence.

Two years later, almost to the day, Levine pled guilty in the United States District Court for the Eastern District of New York to tax evasion and obstruction of justice. He was sentenced to three years' imprisonment, a fine, costs of prosecution, and restitution of $996,755 in federal excise taxes. With the federal indictment thus out of the way, the state sentence could now be imposed.

Since restitution had been imposed in federal court, Levine presumably was eligible for the stipulated downward revision in state restitution. There was little discussion about downward revisions at the state sentencing, however, because Justice Rohl was indignant that Levine was unprepared to pay *any* "up front" restitution at sentencing. Instead, he asked for an additional 12 months to pay, offering no good reason for his recalcitrance. Moreover, since the time of his arrest and subsequent plea bargain (according to the state), Levine had taken expensive vacations, made improvements to his home, continued to own nine Mercedes–Benz automobiles and a boat appraised at $375,000, and funded a costly defense to the federal and state charges against him.

Justice Rohl decided that since Levine had so flagrantly ignored it, he was under no obligation to honor the sentencing agreement of May 11, 1987. After Levine spoke in his own behalf, Justice Rohl sentenced him to 11 consecutive terms of two to six years' imprisonment on the grand larceny counts, to run concurrently to 974 concurrent terms of one to three years' imprisonment on the falsification of business records counts, to run concurrently to concurrent one-year terms of

imprisonment on the remaining counts. Under N.Y. Penal Law § 70.30(1)(c), this netted out to a sentence of 10 to 20 years' imprisonment—far in excess of the two-year sentence contemplated in the plea agreement. In addition, the state sentence was not concurrent with Levine's federal sentence, as had been agreed. Justice Rohl also imposed a fine of $1,000 on each of the 11 grand larceny counts, and $500 on each of the 974 falsification of business records counts, for a total of $498,000.

Hearing this, Levine tried to protest during the sentencing, but Justice Rohl told him not to interrupt. When Levine again tried to speak at the end of sentencing, he was remanded and removed from the courtroom. Levine's counsel was permitted to leave the courtroom and speak with Levine. After conferring with his client, counsel returned to the courtroom and asked Justice Rohl to reconsider the sentence. Counsel expressly waived Levine's right to be present.

With Levine still outside the courtroom, Justice Rohl reduced the fine for falsification of business records to $100 for each count. This left the total state fine at $108,400. Justice Rohl also imposed, as an alternative to the fines, additional consecutive one-day terms of imprisonment for each $5.00 in fines not paid by June 29, 1990. No other changes in the sentence were made.

On a direct state appeal, the Appellate Division, Second Department, modified the sentence by deleting the provision for additional imprisonment in the event that the fines were not paid, but otherwise affirmed the sentence. *See People v. Levine*, 167 A.D.2d 484, 562 N.Y.S.2d 155 (2d Dep't 1990). The Court of Appeals denied leave to appeal. 77 N.Y.2d 879, 568 N.Y.S.2d 922, 571 N.E.2d 92 (1991).

Thereafter, Levine mounted a collateral attack on the state sentence. He moved pursuant to N.Y.Crim.Proc.Law §§ 440.10 and 440.20 to vacate the judgment and sentence. The Supreme Court, Suffolk County, denied the motion, and the Appellate Division, Second Department, affirmed. *See People v. Levine*, 188 A.D.2d 665, 592 N.Y.S.2d 268 (2d Dep't 1992). Leave to ap-

peal to the Court of Appeals was denied. 82 N.Y.2d 708, 601 N.Y.S.2d 604, 619 N.E.2d 682 (1993). Levine also applied for a writ of error *coram nobis* in the Appellate Division on the ground of ineffective assistance of appellate counsel. The Appellate Division denied the petition at the same time that it denied the § 440 motion. Although Levine sought leave to appeal, the denial of a petition for a writ of error *coram nobis* is not appealable to the Court of Appeals. *See People v. Marsicoveteri,* 79 N.Y.2d 913, 581 N.Y.S.2d 664, 590 N.E.2d 249 (1992).

Eventually, Levine returned to the United States District Court for the Eastern District of New York, where he had pled guilty to the federal charges, this time in pursuit of a writ of habeas corpus under 28 U.S.C. § 2254. He raised four arguments: (1) the consecutive sentences imposed on him for grand larceny violated the federal double jeopardy clause because there was only a single larceny; (2) his absence from the "resentencing" proceedings violated his federal due process right to be present; (3) both his trial and appellate counsel were ineffective, in violation of the Sixth Amendment; and (4) the state sentencing court was required, again as a matter of federal due process, to impose the sentence bargained for or, at least, permit him to withdraw his plea and proceed to trial.

The district court dismissed Levine's petition in an unpublished order. *See Levine v. Commissioner of Correctional Services,* No. 93 CV 3069 (E.D.N.Y. Nov. 26, 1993). The court held that it could not consider Levine's double jeopardy claim because he failed to raise it in his letter application seeking leave to appeal to the New York Court of Appeals. It was, therefore, fatally defective as an unexhausted claim. *See* 28 U.S.C. § 2254(b), (c); *Rose,* 455 U.S. at 510, 102 S.Ct. at 1199.

The court went on to address Levine's remaining claims, holding that: (1) any error associated with Levine's absence from resentencing was harmless because the resentencing proceedings benefitted Levine (after the Appellate Division deleted the provision for additional imprisonment if the fines were not paid); (2) Levine had not received ineffective assistance of trial or appellate counsel; and

(3) federal review of Levine's claim concerning the plea bargain was blocked by a state procedural bar. Thus, the district court denied claims (1) and (2) on the merits, even though it had already identified the double jeopardy claim as unexhausted and had dismissed the petition on that ground.

## DISCUSSION

■ The exhaustion requirement of *Rose v. Lundy* is satisfied if the petitioner "fairly presented" the federal constitutional claim to the highest state court. *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); *Daye v. Attorney General of the State of New York,* 696 F.2d 186, 191 (2d Cir.1982) (*in banc*) (petitioner must have informed the state court of both the factual and legal premises of the claim asserted in federal court), *cert. denied,* 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984). A petition containing both exhausted and unexhausted claims, a so-called mixed petition, must be dismissed *in its entirety. See Rose,* 455 U.S. at 510, 522, 102 S.Ct. at 1199, 1205.

■ The most forthright way to present a constitutional claim to a state court is, of course, to recite the relevant facts and then make an explicit constitutional argument. *See, e.g., Daye,* 696 F.2d at 192 ("Obviously if the petitioner has cited the state courts to the specific provision of the Constitution relied on in his habeas petition, he will have fairly presented his legal basis to the state courts."). A habeas petitioner in state court is not required, however, to cite "chapter and verse" of the Constitution to satisfy the exhaustion rule. *Id.* at 194. Instead, he may fairly apprise the state court of a federal constitutional claim by relying on federal and state cases that employ a constitutional analysis, asserting the claim in terms that "call to mind a specific right protected by the Constitution," or alleging facts that fall "well within the mainstream of constitutional litigation." *Id.* If the issue is presented to the state court in any of these less precise ways, the federal habeas court should treat it as exhausted.

(1) *Double jeopardy claim*

■ We agree with the district court that Levine did not raise the double jeopardy claim in his letter application to the Court of Appeals seeking collateral review of his sentence. His only argument was that there was a conflict between appellate divisions as to when consecutive sentences may be imposed in larceny cases—a state law issue. The state, in its letter opposing leave to appeal, adverted to double jeopardy by noting that a case relied upon by Levine, *People v. Abbamonte*, 43 N.Y.2d 74, 400 N.Y.S.2d 766, 371 N.E.2d 485 (1977), was "concerned with double jeopardy issues, not consecutive sentences." Only then, in his "reply" to the state's letter, did Levine pick up on the double jeopardy theme:

> Fourth, the Attorney General's purported distinction of *People v. Abbamonte* (43 N.Y.2d 74 [400 N.Y.S.2d 766, 371 N.E.2d 485]) as resting on double jeopardy concerns only is unsound. The principles of double jeopardy operate to prevent multiple punishment where, as here, the prosecutor is simply fragmenting the same crime (*see, People v. Brown*, 40 N.Y.2d 381, 386 [386 N.Y.S.2d 848, 353 N.E.2d 811], *cert. denied*, 433 U.S. 913 [97 S.Ct. 2986, 53 L.Ed.2d 1099], quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 [89 S.Ct. 2072, 2076, 23 L.Ed.2d 656] ).

Levine believes that this reference to double jeopardy in his "reply" letter fairly apprised the Court of Appeals of the double jeopardy claim. We disagree.

New York Criminal Procedure Law § 460.20 establishes the procedure by which a judge of the New York Court of Appeals may grant or deny leave to appeal a decision of an intermediate appellate court. Section 460.20(4) provides that the judge makes the determination based on "such papers as he may request the parties to submit." In a January 5, 1993 letter (erroneously dated January 5, 1992), the Clerk of the Court of Appeals instructed Levine's attorney that

> communications to the assigned Judge must be mailed *within three weeks* of the date of this letter, and a copy must be served on the adverse party. Any responsive communications must be mailed *within two weeks* of the date of the applicant's communication, with a copy also served on the adverse party. (emphasis in original)

A copy of the clerk's letter was sent to the state attorney general.

As is plain from these instructions, there is no provision for a "reply" from Levine to the state's "responsive communications." Levine's reply letter was therefore a creature of his own making. Furthermore, all materials from Levine had to be mailed by January 26, 1993. Levine's reply letter was dated February 8, 1993. Accordingly, the double jeopardy claim was not fairly presented to the Court of Appeals, and we affirm the district court's dismissal of the habeas petition on exhaustion grounds.

This does not end our inquiry, however. The district court went on to deny two of Levine's remaining claims on the merits, holding that any error associated with Levine's absence from the resentencing proceedings was harmless and that Levine had not received ineffective assistance of trial or appellate counsel.

■ Passing on the merits of claims in a habeas petition containing unexhausted claims runs counter to *Rose v. Lundy, supra* (petition containing both exhausted and unexhausted claims must be dismissed without addressing the merits). It does not abrade *Rose v. Lundy*, however, to review claims in a habeas petition to determine whether they are exhausted or barred by state procedural rules. *See, e.g., Toulson v. Beyer*, 987 F.2d 984 (3d Cir.1993). Doing so, we do not reach the question of harmlessness on Levine's resentencing claim because we find that it was unexhausted; and we conclude that his ineffective assistance claim was procedurally barred. *See Reid v. Senkowski*, 961 F.2d 374 (2d Cir.1992) (affirming denial of habeas petition, but correcting district court's disposition of one claim). *Cf. Toulson*, 987 F.2d at 987–89 (reversing grant of habeas corpus due to three incorrectly resolved claims).

(2) *Defendant's absence during resentencing*

■ In his petition, Levine argued that his due process rights were violated when his

sentence was reconsidered in his absence. The district court rejected that claim on the merits, holding that any error involved was harmless. The state urges us to avoid the entire question because Levine did not fairly apprise the New York Court of Appeals of the claim, and thus failed to satisfy the exhaustion requirement. We agree with the state.

In his § 440 motions in state court, Levine challenged his absence from the resentencing proceedings solely on state statutory grounds. He never claimed that his absence violated his federal constitutional rights, nor did he cite any federal or state cases employing a constitutional analysis. Furthermore, his appeal did not "call to mind a specific right protected by the Constitution" or allege a "pattern of facts that is well within the mainstream of constitutional litigation." It is noteworthy that Levine's own counsel, after consulting with his client, requested reconsideration of the sentence and waived Levine's right to be present.

Levine argues that his § 440 motion cited a state case, which, in turn, cited a federal case referring to a defendant's constitutional right to be present at sentencing. This is simply too soggy a reed upon which to rest a constitutional claim. Accordingly, Levine did not fairly apprise the Court of Appeals that he was raising a constitutional objection to his absence from resentencing.

In holding that Levine failed to exhaust his resentencing and double jeopardy claims, we assume, without deciding, that he can still pursue the claims in state court pursuant to CPL § 440.20 (motion to set aside sentence) despite his failure to raise the claims on direct state appeal. *See McKinney's CPL,* "Practice Commentaries," § 440.20, p. 559 ("A motion to set aside sentence may be brought even though the illegality upon which it is grounded presently is appealable or could with due diligence have been appealed."). Thus, there appears no reason to treat these unexhausted claims as exhausted. *See Duckworth v. Serrano,* 454 U.S. 1, 3, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981) (per curiam); 28 U.S.C. § 2254(b) (absence of available state corrective process constitutes exception to exhaustion requirement).

(3) *Ineffective assistance claim*

Federal habeas review is prohibited if a state court rests its judgment on an "adequate and independent state ground." *Harris v. Reed,* 489 U.S. 255, 261–62, 109 S.Ct. 1038, 1042–43, 103 L.Ed.2d 308 (1989). A state procedural default qualifies as an adequate and independent ground unless the petitioner shows "cause for the default and prejudice resulting therefrom." *Gonzalez v. Sullivan,* 934 F.2d 419, 421 (2d Cir.1991) (citations omitted). Habeas review is not prohibited, however, unless "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Harris,* 489 U.S. at 263, 109 S.Ct. at 1043 (citations and internal quotations omitted).

The last state court to render judgment on Levine's ineffective assistance of counsel claim was the Appellate Division, pursuant to Levine's § 440 motion. That court held that review of the claim was procedurally barred under § 440.10(2)(c) (motion to vacate judgment must be denied where claim was not raised on earlier direct appeal despite sufficient record). 188 A.D.2d at 665, 592 N.Y.S.2d at 268. The subsequent order of the Court of Appeals denying leave to appeal without comment does not change the result. *See Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991) ("[W]here ... the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits."). Levine has made no attempt to show cause and prejudice, nor is either apparent. Accordingly, review of this claim is prohibited.

(4) *Plea agreement claim*

Having registered our agreement with the district court on one of Levine's claims, and our disagreement on two of his other claims, we turn to Levine's final claim.

The district court held that Levine's second due process claim—that the district court was obligated to sentence him in accor-

dance with the plea agreement or permit him to withdraw the plea—was procedurally barred. Levine argues that the claim is not barred. We, however, agree with the district court.

The last state court to render judgment on Levine's claim concerning the plea agreement was the Appellate Division. The court held that, like Levine's ineffective assistance claim, his plea agreement claim was procedurally barred. *See* 188 A.D.2d 665, 592 N.Y.S.2d 268 (2d Dep't 1992); *see also* 167 A.D.2d 484, 562 N.Y.S.2d 155 (2d Dep't 1990) (holding, on direct appeal, that the plea agreement claim was procedurally barred). Review of the claim is therefore precluded absent a showing of cause and prejudice.

 To satisfy the cause standard, a petitioner must show that " 'some objective factor external to the defense impeded counsel's efforts' to raise the claim in state court." *McCleskey v. Zant,* 499 U.S. 467, 493, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991) (quoting *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)). "[I]nterference by officials" is one such factor. *McCleskey,* 499 U.S. at 494, 111 S.Ct. at 1470 (internal quotations omitted).

Levine protests that he suffered "interference" when the trial judge prohibited him from speaking at sentencing, thereby impeding his ability to withdraw his plea. We are unpersuaded.

While it is true that the court refused to permit Levine to speak after sentence was imposed, his counsel was permitted to speak at length after consulting with Levine. He made no effort to withdraw the plea. Moreover, Levine was permitted to speak immediately prior to sentencing, after the trial judge indicated that he felt no obligation to adhere to a plea agreement that Levine had so monumentally ignored. Again, no effort was made to withdraw the plea. In addition, during the two years that preceded imposition of sentence Levine never even tried to determine the effect his non-compliance would have on the plea agreement.

Levine protests that the state courts "whipsawed" him in a game of "procedural ping-pong": to preserve his claim for appeal, he was required to move to withdraw the plea prior to sentencing; yet he had no way of knowing until after sentencing that there was any need to withdraw the plea. We reject the proposition that Levine could ignore the plea agreement on a grand scale and still expect the sentencing court to be bound by it. And even if we were sympathetic to this argument, Levine and his counsel had ample opportunity at sentencing to move to withdraw the plea. Since Levine has failed to show cause, there is no need to address the prejudice requirement, and federal habeas review of Levine's plea bargain claim is unavailable.

## CONCLUSION

We have considered all of Levine's remaining arguments, and find them to be meritless. The judgment of the district court dismissing the petition for a writ of habeas corpus is affirmed.

VAN GRAAFEILAND, Circuit Judge, concurring:

Because of the constraints imposed upon the federal courts in their exercise of jurisdiction under 22 U.S.C. § 2254, I concur. I do so with great reluctance, however, because I believe that Sheldon Levine's due process rights were violated during his sentencing.

Recognizing that sentencing must satisfy the requirements of due process, *see Innes v. Dalsheim,* 864 F.2d 974, 977 (2d Cir.1988), *cert. denied,* 493 U.S. 809, 110 S.Ct. 50, 107 L.Ed.2d 19 (1989), and *People v. Outley,* 80 N.Y.2d 702, 712, 594 N.Y.S.2d 683, 610 N.E.2d 356 (1993), the New York courts emphasize the importance of explaining to defendants the sentencing exposure that will follow their guilty pleas. *See, e.g., People v. Johnson,* 187 A.D.2d 532, 589 N.Y.S.2d 918 (1992) (mem.); *People v. Molesse,* 162 A.D.2d 629, 557 N.Y.S.2d 387 (mem.), *appeal denied,* 76 N.Y.2d 988, 563 N.Y.S.2d 777, 565 N.E.2d 526; *People v. Gibbs,* 161 A.D.2d 661, 662–63, 555 N.Y.S.2d 439 (1990) (mem.). If the trial judge in the instant case intended that, upon Levine's breach of the stated conditions the court could impose whatever sentence it

wished, it should have said so. *See, e.g., Outley, supra,* 80 N.Y.2d at 715, 594 N.Y.S.2d 683, 610 N.E.2d 356, where the trial court said:

> If you violate any of the above conditions, the Court will not be bound by the promise to you and [may] sentence you to whatever sentence [it feels] is justified. Do you understand that?

In *People v. Black,* 187 A.D.2d 517, 589 N.Y.S.2d 911 (1992) (mem.), the court said:

> The defendant argues, and the People concede, that the court erred in unilaterally imposing an enhanced sentence without having previously warned the defendant during the plea allocution that such a consequence could result upon his failure to abide by the plea conditions.

*Id.* at 518, 589 N.Y.S.2d 911 (citations omitted).

In the instant case, the only discussion in the plea allocution about possible alternative sentences refers to sentencing following a trial. In the Assistant Attorney General's letter of January 14, 1991 to Judge Kaye of the New York Court of Appeals, counsel quoted the following statement of Levine's then attorney Thomas Puccio in support of her contention that Levine understood the sentencing alternative:

> Mr. Puccio: He's been advised of the maximums, both the state and federal proceedings. And they could be consecutive not concurrent. And there are no promises if this plea is rejected.

Counsel refers to the same quotation at page 17 of the Commissioner's brief on this appeal. As is demonstrable from a more complete transcript of the allocution, the quoted statement of attorney Puccio was taken out of context and therefore is misleading. The sentencing court's statement that immediately preceded Mr. Puccio's reads as follows:

> THE COURT:—Mr. Puccio, have you advised your client—and I'm really addressing each attorney, because I'll ask each of you respectively; I want an expression from your clients—*in the event this matter proceeds to trial,* that the promise made by the Court at that conference will be withdrawn and the Court will not be bound, *in event of a conviction,* will not be bound by any of the promises made. And that I specifically ask each attorney, have you advised your clients as to the possible exposure *in the event of a conviction* with regard to whether or not they would be concurrent with any possible federal imprisonment and also whether or not you have advised each client, because there are concurrent matters, *of their exposure in the event of a trial and a subsequent conviction.* (emphasis supplied)

There is a substantial difference between a sentence conditioned upon a jury's finding of guilt and a sentence imposed by an apparently irate judge following a defendant's failure to abide by a plea agreement. The sentencing judge should have made clear his intentions and then given the defendant an opportunity to withdraw his plea. *See Stewart v. Scully,* 925 F.2d 58, 61 (2d Cir.1991). The court's failure to do either was exacerbated by his completing the sentencing of the defendant after he had ordered the defendant removed from the courtroom.

I regret, therefore, that the deference we owe the New York courts prevent us from granting the writ requested herein.