Salvatore BACCHI, Petitioner,

v.

Daniel SENKOWSKI, Superintendent, Clinton Correctional Facility, Respondent.

93–CV–2927 (JS).

United States District Court, E.D. New York.

May 15, 1995.

Salvatore Bacchi, Ossining, NY, pro se.

Michael Blakey, Asst. Dist. Atty. for Suffolk County, Riverhead, NY, for respondent.

## MEMORANDUM AND ORDER

SEYBERT, District Judge:

Petitioner Salvatore Bacchi, proceeding *pro se*, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted in 1991, upon a jury trial, of Rape in the First Degree and Sodomy in the First Degree. He is presently serving two concurrent prison terms of eight to sixteen years.

Petitioner asserts the following claims in support of this application. First, he maintains that he was denied his constitutional right to a fair trial as a result of repeated prosecutorial misconduct. Specifically, he contends that the prosecutor allowed his witness to testify falsely, improperly impeached the testimony of the sole defense witness, and during summation, made inflammatory statements, and while on the verge of tears, begged the jury to convict the petitioner. Petitioner also contends that the trial court's missing witness charge included an incorrect statement of the law that unduly prejudiced him.

The Court has carefully reviewed the submissions of the parties, as well as the full record of proceedings in the state courts. For the reasons discussed herein, the petition is denied in its entirety.[1]

## BACKGROUND

At petitioner's trial, the prosecution introduced evidence to show that on the evening of December 28, 1989 at approximately 9:00

---

1. Petitioner's request for an evidentiary hearing likewise is denied.

P.M., the complainant entered Phases, a neighborhood bar, to celebrate her birthday. Tr. at 147–49. Approximately four hours later, the petitioner Salvatore Bacchi entered and sat down alongside the complainant. *Id.* at 164. Shortly after introducing himself as "Richie," Bacchi attempted to kiss the complainant, *id.* at 167, and placed her hand upon a gun contained within his coat pocket. *Id.* at 171. Bacchi subsequently placed the visible gun against the complainant's side, beyond the view of other patrons, and forced her to leave the bar with him. *Id.* at 174.

Bacchi then directed the complainant to drive her car at gunpoint to a warehouse located at 151 West Industry Court. *Id.* at 179. Upon arrival, Bacchi unlocked the premises, shoving the complainant inside, and raped and sodomized her. *Id.* at 186, 188, 190–93, 198–202. Shortly thereafter they dressed and departed the premises. En route to Phases, Bacchi threatened, "If you tell anybody about what happened here tonight, I'm going to have you killed. I know people in the Mafia." *Id.* at 207. Bacchi then asked for the complainant's phone number; she furnished an old disconnected number. *Id.* at 207–08. Back at the parking lot, the complainant asked Bacchi where his car was. Bacchi pointed out the bartender's car, the license plate number of which she noted on a matchbook once he exited her vehicle. *Id.* at 211. The complainant thereafter drove to a nearby gas station, and called 911. *Id.* at 212. Uniformed police officers responded and accompanied her to Phases; however, Bacchi was not inside. *Id.* at 215. The complainant was then taken to Good Samaritan Hospital in West Islip where she was examined and evidence for a Rape Kit was collected. *Id.* at 218. The police then escorted her to 151 West Industry Court where she identified the building in which she was raped. *Id.* at 404–05. At approximately 2:00 P.M. on December 29, 1989, Bacchi was arrested by Suffolk County Police detectives upon admitting to having had consensual sex, the previous evening, with a woman of the same first name as the complainant. Pretrial hearing [hereinafter PT] at 8–9. Bacchi was charged with one count of Rape in the First Degree (N.Y. Penal Law § 130.35) and one count of Sodomy in the First Degree (N.Y.

Penal Law § 130.50). That evening, the complainant picked Bacchi, with his counsel present, out of two separate lineups, Tr. at 221–22, after failing to identify him in a photo array. PT at 18–19. Petitioner's criminal trial was held before a jury in the Suffolk County Court of the State of New York.

Prior to trial, *Wade, Huntley,* and *Sandavol* hearings were held. The court determined at the *Wade* hearing that the identifications made with respect to the lineups were admissible. Tr. at 15. At the *Huntley* hearing, the court held that all pre- and post-Miranda statements made by the petitioner were admissible. *Id.* at 16–17. The court further determined that evidence of prior convictions would be admissible under a *Sandavol* compromise, whereby the petitioner upon taking the stand, could be asked only if he had ever been convicted of a felony. *Id.* at 7. The People's *Molineaux* application to introduce evidence of uncharged crimes was denied by the court. *Id.* at 14.

At petitioner's trial, on direct examination by the prosecution, the complainant described the events as summarized above. On cross-examination by the defense, the complainant was questioned whether she knew Nicholas DeCicco, and whether she was at an attorney's home in Lindenhurst with him on March 17, 1990, almost three months after the rape. *Id.* at 327. Over the prosecution's objection, the complainant responded that she knew DeCicco, and that the location in question was the home of the defense attorney's partner. *Id.* at 327–28. Later in the questioning, the defense asked the complainant, "Who asked you to go there?" *Id.* at 342. With the court's permission, after warning that the answer was incriminatory, the complainant answered that she went there "to get a phone number of a woman that Nick told me ... Sal put a gun to her head, and raped her." *Id.* at 342. At that point, the defense requested a mistrial; the court denied this request. *Id.* at 342–43. On redirect examination, the prosecution elicited the same information, and the defense repeated its motion for a mistrial. *Id.* at 348, 350. The court again denied the request, finding that the defense had "opened the

door completely to this line of questioning ... on cross-examination" and had adopted the witness as its own. *Id.* at 351.

The prosecution offered into evidence the Rape Kit, and the testimony of Nurse Walker, who assisted the treating physician in examining the complainant, and had prepared the kit in the emergency room at Good Samaritan Hospital. *Id.* at 436–39. Testimony was proffered from Leonard Gold, an employee of Finch Realty, who managed the premises located at 151 West Industry Court. The premises lease was placed into evidence, after the foundation therefor was established through Gold's testimony that the petitioner was present when the lease was executed in the names of Matthew and Salvatore Bacchi. *Id.* at 473. The People also called Charles Wagner, a forensic serologist and crime-scene analyst employed by the Suffolk County Crime Laboratory. Mr. Wagner testified that he performed tests on blood samples taken from the petitioner and the complainant, and from sample cuttings of the panties the complainant wore on December 28, 1989. *Id.* at 495–98. The test results, based on PGM characteristics, were consistent with Salvatore Bacchi's blood grouping and eliminated 96 percent of the male caucasian population. *Id.* at 497–502. On cross-examination, it was adduced that Mr. Wagner performed these tests one week prior to trial, *id.* at 503, and that his co-worker Linda Sherlock, also a forensic serologist, had performed similar tests in September 1990, *id.* at 504–05, which excluded the petitioner as a possible semen donor. *Id.* at 512–13. On re-direct examination, Wagner indicated that the two test results did not differ; rather, it was the interpretation of the results that differed. *Id.* at 556. Sherlock further testified on redirect examination that she had made a mistake in her interpretation of the September 1990 PGM test, and that she now concurred with Wagner's interpretation. *Id.* at 595, 600, 604.

The defense presented Henry Wrieth as its sole witness. Mr. Wrieth was tending bar in Phases on December 28, 1989, the date of the incident in question. Wrieth testified that he served Bacchi and the complainant that evening, and observed that they were acting cordial to each other, and departed together. *Id.* at 671–73. On cross-examination, Wrieth testified that just prior to leaving, the complainant mentioned to him twice that she would be back, and that he told Detective Simonetti that he found that rather odd. *Id.* at 686.

In his summation, the prosecutor addressed a juror by name, *id.* at 750, referred to the jurors' fear of guns, *id.* at 751, and characterized the petitioner as a "sick man." *Id.* at 758. Defense counsel, after specifically objecting to these statements, called for a mistrial based on the totality of the prosecutor's conduct on summation, asserting that among other things, the prosecutor was on the verge of tears, begging the jury to convict. *Id.* at 806. This request was denied by the court.

Defense counsel requested a jury charge striking from the record any and all testimony regarding Nick DeCicco, and any alleged statements he made to the complainant. *Id.* at 701. The court charged these statements as hearsay, not offered for the truth of the matters asserted, but rather offered only for the fact that the statement was made by Mr. DeCicco to the complainant. *Id.* at 782. The court denied the defense's request for a missing witness charge for the treating physician. *Id.* at 706. In addition, the court gave the following missing witness charge with respect to Detective Simonetti.

> During cross examination, statements attributed to Mr. Wrieth that were made to Detective Simonetti were elicited by the prosecution. If he had been called as a witness by the People, Detective Simonetti's testimony could possibly have been of material help and assistance to the jury in determining the credibility of Henry Wrieth's testimony. You may not, under the law, speculate or guess as to what or how Detective Simonetti would have testified, if called. However, from the failure of the People to call Detective Simonetti, the law permits but does not require you to infer, if you believe it proper to do so, that if Detective Simonetti had been called by the People, and had testified, such testimony

would not support or would even contradict the testimony of Henry Wrieth. *Id.* at 791–92.

Petitioner was convicted on February 23, 1991 of Rape in the First Degree and Sodomy in the First Degree. Prior to sentencing, the petitioner moved for an order, pursuant to New York Criminal Procedure Law [CPL] §§ 290.10 and 330.30, to set aside the verdict and dismiss the indictment. The § 290.10 motion was predicated on a lack of legally sufficient evidence for the jury to have convicted the petitioner. The § 330.30 motion was grounded on the alleged failure of the People to provide all *Rosario* and *Brady* material. *See People v. Rosario*, 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881 (1961) (requiring production of prior statements of prosecution witnesses); *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (requiring disclosure to the defense of exculpatory materials). The trial judge denied the motion in its entirety. *See* Resp't Br. to the Appellate Division, Ex. A, at 2. The petitioner then moved for an order to vacate the judgment of conviction pursuant to CPL § 440.10, based upon the failure of the People to provide all *Rosario* material. In denying this motion, the court found that the petitioner failed to support his allegation that additional *Rosario* material existed, or that it materially prejudiced him. *See* Resp't Br. to the Appellate Division, Ex. B.

Bacchi appealed the judgment of conviction to the New York State Supreme Court, Appellate Division, Second Department [hereinafter "Appellate Division"]. On direct appeal, petitioner argued that the People did not comply with CPL § 30.30(1)(a), in that they were not ready for trial in a timely fashion. Appellant's Br. to the Appellate Division [hereinafter AB], 32–34. He also maintained that the court failed to inquire about the health of an ill juror during deliberations. AB at 66. Bacchi further contended that he was denied a fair trial (1) through the admission of evidence that he committed an uncharged rape, by permitting the complainant to testify to the Nick DeCicco conversation, *id.* at 35, (2) through an erroneous missing witness charge concerning Detective Simonetti, *id.* at 63–64, (3) through the failure to charge the treating physician as a missing witness, *id.* at 64–65, and (4) through prosecutorial misconduct in connection with the summation, *id.* at 52–57, and in the prosecutor's eliciting of highly prejudicial inadmissible testimony from the complainant on redirect examination. *Id.* at 51–52. In addition, the petitioner asserted that the evidence was legally insufficient and that the verdict was against the weight of the evidence. *Id.* at 59–62. Finally, the petitioner contended that the sentence was illegal and excessive. *Id.* at 68–69.

The Appellate Division consolidated petitioner's appeal of the denial of the CPL § 440.10 motion with the direct appeal. Two issues were presented in this state habeas appeal: petitioner alleged that (1) it was error for the state court, on collateral review, to deny the CPL § 440.10 motion without a hearing, Appellant's Br. II, at 7, 8, and that (2) the People improperly suppressed or withheld production of evidence and failed to call witnesses in an attempt to circumvent the *Rosario* rule. Appellant's Br. II, at 9.

On October 13, 1992, the Appellate Division unanimously affirmed Bacchi's conviction. In an opinion reported at *People v. Bacchi*, 186 A.D.2d 663, 588 N.Y.S.2d 619 (1992), the Appellate Division concluded that Bacchi's guilt indeed had been proven beyond a reasonable doubt, and that the verdict was not against the weight of the evidence. *See id.* 588 N.Y.S.2d at 620. In particular, the court noted that there is no requirement that a claim of rape or sodomy by forcible compulsion be corroborated by medical evidence. *See id.* The court also found petitioner's claim that he was denied his right to a speedy trial to be unpreserved for appellate review due to his failure to make a motion to dismiss the indictment on that ground. *See id.* With respect to the introduction of prejudicial testimony that petitioner committed a prior rape, the court found that defense counsel, during its cross-examination of the complainant, explicitly opened the door to the introduction of the subject matter, and that the People's redirect examination merely paralleled that testimony. *See id.* 588 N.Y.S.2d at 620–21. In addition, the court

noted that the sentence imposed was not excessive as the petitioner was properly adjudicated a second felony offender. *See id.* 588 N.Y.S.2d at 621. The Appellate Division further determined that, in view of the conclusory nature of the petitioner's allegations, the trial court was within its discretion in denying his CPL § 440.10 motion without conducting an evidentiary hearing. *See id.* Finally, the court found Bacchi's other contentions to be without merit or unpreserved for appellate review. *See id.*

On December 17, 1992, the New York State Court of Appeals denied Bacchi's application for leave to appeal. *See People v. Bacchi,* 81 N.Y.2d 760, 594 N.Y.S.2d 722, 610 N.E.2d 395 (1992).

The procedural history of this petition having been set forth above, the Court now turns to address whether it may reach the merits of the petitioner's claims.

## DISCUSSION

I. *Availability of Federal Judicial Review of the Merits of the Petitioner's Claims*

Under 28 U.S.C. § 2254(b), "[a]n application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State."[2] 28 U.S.C. § 2254(b); *see Rose v. Lundy,* 455 U.S. 509, 510, 102 S.Ct. 1198, 1199, 71 L.Ed.2d 379 (1982); *Blissett v. Lefevre,* 924 F.2d 434, 438 (2d Cir.), *cert. denied,* 502 U.S. 852, 112 S.Ct. 158, 116 L.Ed.2d 123 (1991).

■ A petition containing both exhausted and unexhausted claims (a so-called mixed petition) must be dismissed in its entirety. *See Rose,* 455 U.S. at 510, 102 S.Ct. at 1199; *Levine v. Comm'r of Correctional Servs.,* 44 F.3d 121, 124 (2d Cir.1995). Therefore, the procedural history of each of the claims asserted within the petition must be reviewed separately to determine whether the exhaustion requirement has been satisfied.

■ The Second Circuit Court of Appeals has formulated a two-prong test for determining whether an applicant for federal habeas relief has exhausted his state remedies. First, the petitioner must have "fairly presented" his federal claim to the state courts. *See Daye v. Attorney Gen.,* 696 F.2d 186, 191 (2d Cir.1982) (en banc). To satisfy this requirement, the petitioner must demonstrate that he has informed the state courts of both the factual and the legal premises of the claim he now asserts in federal court. *See id.* No elaborate articulation of the claim is required; citation to the constitution or to state or federal cases that employ a constitutional analysis, couching the claim in terms "so particular as to call to mind a specific right protected by the Constitution," or alleging facts that are "within the mainstream of constitutional litigation," each suffice to alert the state court to the constitutional claim. *Id.* at 194; *see Reid v. Senkowski,* 961 F.2d 374, 376 (2d Cir.1992) (per curiam).

■ The second prong of this doctrine generally requires the applicant to utilize all available avenues of appellate review within the state-court system before proceeding to federal court. *See Daye,* 696 F.2d at 190. Typically, this criterion requires a direct appeal to the highest court of the state. *See id.* at 190–91 n. 3. This requirement, however, also may be satisfied where the applicant has collaterally attacked the judgment of conviction within the state courts, and thereafter has appealed the denial of his application to the highest court of the state. *See Lloyd v. Walker,* 771 F.Supp. 570, 574 (E.D.N.Y.1991). Conversely, where the claim was not properly raised on direct state appeal, a New York State petitioner must exhaust all extant postjudgment remedies available under CPL §§ 440.10 (motion to vacate judgment) and 440.20 (motion to set aside sentence). *See Levine,* 44 F.3d at 126; *see also* 28 U.S.C. § 2254(c) (The exhaustion requirement is not met if the habeas petitioner "has the right under the law of the State to raise, by any available procedure, the question presented."); *cf.* 28 U.S.C. § 2254(b) (absence of

---

**2.** The petitioner satisfies the "in custody" requirement as he is currently serving two concurrent prison sentences.

available State corrective process constitutes exception to exhaustion requirement).

■ A federal court generally is precluded from reviewing any claim included within the habeas petition for which a "state court rests its judgment on an adequate and independent state ground, including a state procedural bar." *Reid,* 961 F.2d at 377. A state procedural bar arises through a failure to make a timely appeal, or through a failure to preserve a claim of appeal through contemporaneous objection. *See id.* A procedurally barred claim will preclude federal habeas review of that claim "unless the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." *Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989) (internal quotes omitted).

■ For a procedural bar to exist, it is necessary that "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Id.* at 263, 109 S.Ct. at 1043 (internal quotes omitted). The silence of a reviewing state court will not automatically negate the existence of a procedural bar, however, for "where ... the last reasoned opinion on the claim explicitly imposes a procedural default, [it is] presume[d] that a later decision rejecting the claim did not silently disregard that bar and consider the merits." *Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991).

■ In addition, in cases in which numerous claims are asserted on appeal to the state reviewing court, the judgment must unequivocally refer to a state procedural bar as to each specific claim; for a state court's ambiguous invocation of a procedural default does not bar federal habeas review. *See Harris,* 489 U.S. at 264, 109 S.Ct. at 1044; *compare Reid,* 961 F.2d at 377 ¶ 3 (numerous claims disposed of by state appellate court as "either unpreserved for appellate review or without merit" were not procedurally barred) *with id.* ¶ 6 (single claim disposed of by state appellate court, employing language "the de-

fendant's *pro se* argument ... is unpreserved for appellate review," was procedurally barred).

■ Finally, it should be noted that a procedural bar overrides the general exhaustion doctrine to some extent. This is so because the inclusion within a federal habeas petition of an unexhausted claim, for which no further state review (direct or collateral) is available, will not warrant the dismissal of the entire petition. *See Harris,* 489 U.S. at 263 n. 9, 109 S.Ct. at 1043 n. 9 ("[A] federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred."); *Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991); *see also Levine,* 44 F.3d at 126 ("In holding that [the petitioner] failed to exhaust his resentencing and double jeopardy claims, we assume, without deciding, that he can still pursue the claims in state court pursuant to CPL § 440.20 (motion to set aside sentence) despite his failure to raise the claims on direct state appeal. Thus, there appears no reason to treat these unexhausted claims as exhausted.") (citing 28 U.S.C. § 2254(b) for proposition that "absence of available state corrective process constitutes exception to exhaustion requirement") (other citations omitted).

■ In the instant petition, Bacchi avers, *inter alia,* that prosecutorial misconduct was manifested through the prosecutor's impeachment of the testimony of the sole defense witness at his trial by eliciting the hearsay statement of a police officer who was never called to testify. As this claim was first raised in this petition, this Court must determine if the claim is procedurally barred in the state courts. Under CPL § 460.10, an appeal generally must be taken within thirty days of the sentence, although under CPL § 460.30, in exceptional circumstances, the time for taking an appeal may be extended by up to one year. Further, under CPL § 440.10(2)(c), a collateral attack on a judgment will fail where the defendant unjustifiably failed to raise the relevant ground or issue upon the appeal actually perfected by him. As this claim is procedurally barred in the state courts, it would be futile to require the petitioner to return there before consid-

ering any of the claims raised in his habeas petition. Accordingly, the inclusion of this claim within the petition does not warrant that the entire petition be dismissed.[3] *See Grey*, 933 F.2d at 120.

■■■ Petitioner next asserts that the trial court's missing witness jury instruction constituted an incorrect statement of the law, and therefore prejudiced his due process right to a fair trial. On his direct appeal to the Appellate Division, Bacchi asserted this very claim. The Appellate Division did not directly address this claim, employing the following conclusory language: "The defendant's remaining contentions are either unpreserved for appellate review or without merit." *Bacchi*, 588 N.Y.S.2d at 621. In *Reid v. Senkowski*, 961 F.2d 374 (2d Cir. 1992) (per curiam), upon consideration of identical language employed by the state appellate court, the Second Circuit Court of Appeals ruled that such language was sufficiently equivocal not to constitute an adequate and independent state ground. *See Reid*, 961 F.2d at 377. Accordingly, this claim is amenable to federal habeas review.

In addition, each of the other claims asserted by Bacchi was properly preserved and raised on direct appeal, and is amenable to review by this Court under the general exhaustion doctrine. In raising these claims on appeal, petitioner's brief invoked constitutional arguments sufficient to alert the state courts of their federal character.

Having concluded that three of the four claims asserted within the instant petition are amenable to substantive review, the Court now turns to address the merits of these claims.

## II. *Analysis of the Merits of the Petitioner's Claims*

### A. Improper Jury Charge

Petitioner asserts that the trial court's missing witness charge to the jury contained an incorrect statement of the law that deprived him of a fair trial. Specifically, he maintains that this instruction impermissibly permitted the jury to draw adverse inferences against the defense, rather than the State, on account of the State's failure to call Detective Simonetti as a witness. Petitioner further contends that this instruction prejudiced him insofar as it discredited the testimony of Henry Wrieth, the sole defense witness.

The trial court's missing witness instruction was incorrect. The instruction [reproduced in its entirety, *supra*] should have concluded: "[h]owever, from the failure of the People to call Detective Simonetti, the law permits but does not require you to infer, if you believe it proper to do so, that if Detective Simonetti had been called by the People, and had testified, such testimony *would have supported and corroborated* the testimony of Henry Wrieth." [corrected text emphasized].

Analyzing the context in which this instruction was given, the statements pertaining to Wrieth's conversation with Detective Simonetti were initially elicited by the defense on direct examination. Tr. at 673. The inquiry on cross-examination centered around the witness' limited conversation with the victim as she was leaving the bar, and was of slight evidentiary value. *Id.* at 684–87. In sum, Wrieth's testimony did little to exculpate the petitioner, and the benefit to the petitioner of a correct missing witness instruction would not have been substantial.

■■■ "[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). To overturn a state court conviction based on an improper jury instruction, the federal court must establish "not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Id.* at 146, 94 S.Ct. at 400.

---

**3.** The Court notes that petitioner fails to establish either (i) cause for the default and prejudice resulting therefrom, or (ii) a fundamental miscarriage of justice. *See Harris*, 489 U.S. at 262, 109

S.Ct. at 1042. Accordingly, petitioner's procedural default may not be excused, and the Court is precluded from reviewing the merits of this claim.

■ Regardless of whether the jury charge challenged here is reversible as a matter of state law, the alleged errors are not of federal constitutional dimension. A review of the entire jury charge shows that, on balance, it was fair to the petitioner. Accordingly, this claim is without merit.

## B. Prosecutorial Misconduct

### 1. *False Testimony of Witness*

■ Petitioner contends that the prosecutor allowed his witness to testify falsely. Specifically, he asserts that, despite the prosecutor's knowledge that there was no evidence linking the petitioner to a prior rape, he nevertheless allowed the complainant to testify that a third party informed her that the petitioner had previously committed a rape. This claim is without merit. The record is devoid of facts sufficient to determine the truth or falsity of the previous rape allegation. Moreover, this testimony was originally adduced by the defense on cross-examination of the complainant. Tr. at 341–42. Furthermore, the trial judge instructed the jury that the statement in question was hearsay. *Id.* at 782.

### 2. *Inflammatory Statements on Summation*

Last, petitioner asserts that the prosecutor, during summation, made inflammatory remarks, and while on the verge of tears, begged the jury to convict the petitioner. A review of the record shows that during summation, the prosecutor addressed a juror by name, *id.* at 750, referred to the jurors' fear of guns, *id.* at 751, and characterized the petitioner as a "sick man." *Id.* at 758.

■ On a petition for a writ of habeas corpus, the appropriate standard of review for a claim of prosecutorial misconduct is "the narrow one of due process...." *Donnelly v. DeChristoforo,* 416 U.S. 637, 642, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974). A federal court must distinguish between "ordinary trial error of a prosecutor and that sort of egregious misconduct ... amount[ing] to a denial of constitutional due process." *Id.* at 647–48, 94 S.Ct. at 1873. The issue thus becomes whether "the prosecutorial remarks

were so prejudicial that they rendered the trial in question fundamentally unfair." *Garofolo v. Coomb,* 804 F.2d 201, 206 (2d Cir. 1986).

■ Under the law of the Second Circuit, a court must consider the following three factors in determining whether a criminal defendant has sustained "substantial prejudice" through a prosecutor's summation: "[1] the severity of the misconduct; [2] the measures adopted to cure the misconduct; and [3] the certainty of conviction absent the improper statements." *United States v. Modica,* 663 F.2d 1173, 1181 (2d Cir.1981) (per curiam), *cert. denied,* 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982). In connection with the instant petition, (1) the prosecutor's misconduct—although not to be condoned—was confined to his summation; (2) the court immediately sustained an objection to the characterization of the petitioner as a "sick man;" and (3) the certainty of the conviction, absent the prosecutor's improper statements, would not have been materially undermined. *See id.* In light of this evaluation, the Court concludes that the prosecutor's summation did not substantially prejudice the petitioner, or deprive him of a fair trial.

In sum, petitioner is unable to show that he was denied a fundamentally fair trial. *See Taylor v. Curry,* 708 F.2d 886, 891 (2d Cir.), *cert. denied,* 464 U.S. 1000, 104 S.Ct. 503, 78 L.Ed.2d 694 (1983). Moreover, the Court does not regard the cumulative effect of the errors at his trial to have closely approached a level constituting a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* —— U.S. ——, ——, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)); *see Flanders v. Meachum,* 13 F.3d 600, 605 (2d Cir. 1994); *see also O'Neal v. McAninch,* —— U.S. ——, ——, 115 S.Ct. 992, 994, 130 L.Ed.2d 947 (1995) ("When a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict, that error is not harmless [, and] the petitioner must

win.") (internal quotes omitted). Accordingly, the instant petition must be dismissed.

## CONCLUSION

For the foregoing reasons, petitioner's application for a writ of habeas corpus is denied in its entirety and the petition is dismissed.

SO ORDERED.