**Kenneth ELLMAN, Petitioner–Appellee,**

v.

**R.E. DAVIS, Warden Westchester County Penitentiary, Respondent–Appellant.**

**No. 53, Docket 93–2819.**

United States Court of Appeals, Second Circuit.

Argued Sept. 21, 1994.

Decided Dec. 15, 1994.

Kenneth Ellman, pro se.

Pamela Mann, Asst. Atty. Gen., State of N.Y. (G. Oliver Koppell, Atty. Gen. of the State of N.Y., Sean Delany, Asst. Atty. Gen., Charities Bureau, of counsel), for respondent-appellant.

Before: VAN GRAAFEILAND, MINER and McLAUGHLIN, Circuit Judges.

MINER, Circuit Judge:

Respondent-appellant R.E. Davis, Warden of the Westchester County Penitentiary, appeals from a judgment entered on December 2, 1993 in the United States District Court for the Southern District of New York (Brieant, J.), on a cross-motion for summary judgment, granting petitioner-appellee Kenneth Ellman's petition for a writ of habeas corpus, brought pursuant to 28 U.S.C. § 2254. The court found that petitioner had exhausted his state court remedies and, in the alternative, if he had not exhausted, that he had demonstrated that the remedies available to him in the state courts were ineffective to protect his rights. The court also found for Ellman on the merits.

## I.

The facts surrounding Ellman's incarceration involve a maze of state court proceedings that started in November of 1987, when the New York State Attorney General commenced an action to dissolve the Westchester County Society for the Prevention of Cruelty to Children, Inc. (the "Society"), a non-profit organization chartered under New York State law. Ellman was an officer of the Society and was named in the suit in his official capacity. As part of the dissolution proceeding, the New York State Supreme Court (the "trial court") ordered Ellman to surrender certain handguns that he had obtained in connection with his position as a peace officer in the Society. When Ellman's peace officer status was revoked in May of 1988, he was ordered to comply with the state's handgun registration requirements, under N.Y.Penal Law § 400.00(12–c), within twenty days and submit proof of compliance to the court. On July 27, 1989, because Ellman still had not complied with the May 1988 order, the trial court ordered him to surrender all handguns for which he had not obtained a New York State license.

Eventually, Ellman obtained a license for his handguns in New Jersey, where he resided. In November of 1990, he moved the trial court for an order modifying that court's July 27, 1989 order insofar as it required him to surrender all handguns for which no New York State license had been obtained. The trial court denied this motion and held a contempt hearing, in which it ruled that Ellman was in civil contempt and sentenced him to ninety days in prison. The trial court, by order dated February 5, 1991, stated that if Ellman surrendered his handguns by February 8, 1991, it would vacate the contempt order and void his sentence. Ellman failed to surrender the handguns by the February 8th deadline, and the trial court issued an arrest warrant based on the civil contempt adjudication.

Although Ellman attempted to appeal the trial court's civil contempt adjudication to the Appellate Division, that court dismissed this appeal on the ground that Ellman was a "fugitive from justice and [was] unavailable to obey the mandate of the court." Ellman's leave to appeal to the New York Court of Appeals also was dismissed on the ground that "the order sought to be appealed from does not finally determine the action."

While the appeal was pending, the trial court had entered a final judgment dissolving the Society. However, the trial court retained jurisdiction over the action for the purpose of enforcing the judgment and order. The Attorney General also had moved for an adjudication of criminal contempt based on Ellman's willful disobedience of the trial court's July 31, 1989 and February 5, 1991 orders. The trial court granted the state's motion and ordered that Ellman be sentenced to two thirty-day prison terms for each criminal contempt charge, and separate

arrest warrants were issued. At that point, there were three warrants for Ellman's arrest pending in state court.

On July 24, 1992, Ellman was apprehended in New York pursuant to the three arrest warrants, and, on July 27, 1992, the trial court signed an Order of Commitment remanding Ellman to the custody of the Westchester County Department of Correction based on the prior civil contempt adjudication. Ellman commenced a state habeas action on September 24, 1992, in which he claimed that his detention pursuant to the contempt order was illegal and violated the Due Process Clause of the United States Constitution. On September 28, 1992, the state trial court denied Ellman's habeas petition.

On October 5, 1992, the Attorney General moved to have Ellman's period of detention for civil contempt extended for his continued refusal to surrender the handguns. At the hearing, Ellman still refused to surrender his guns. Accordingly, on October 19, 1992, the trial court granted the state's motion and sentenced Ellman to a second ninety-day prison term for civil contempt. However, rather than issue an order to this effect, the trial judge subscribed his name to the "so ordered" transcript and the transcript thus subscribed was entered in the County Clerk's office. Ellman's counsel objected, explaining that the "so ordered" transcript could not function as an appealable order. Counsel never attempted to submit an order to the trial court, despite his concern about the appealability of the judge's order.

Also in October of 1992, Ellman, acting *pro se*, commenced two Article 78 proceedings in the state Appellate Division in which he challenged the July 27, 1992 commitment order and the October 19, 1992 recommitment order and requested a writ of prohibition based on the same due process claims he had raised in his state habeas petition. The Appellate Division denied both applications, ruling that Ellman had "failed to demonstrate a clear legal right to the relief requested which could not be otherwise safeguarded through alternative remedies." Ellman's leave to appeal to the New York Court of Appeals was denied. On November 18, 1992, Ellman, aided by counsel, again challenged the October 19th recommitment order, this time by way of a direct appeal.

On January 13, 1993, the state trial court signed an order dismissing Ellman's petition for a writ of habeas corpus, finally making it appealable. In that order, the trial court noted that it had advised Lewis & Fiore, attorneys for Ellman, to re-submit an order dismissing the petition, which the attorneys claimed they had submitted but the court had never received. Because Ellman's attorneys never re-submitted the order, the court had to prepare one on its own.

On January 14, 1993, the Attorney General moved to continue Ellman's confinement, and a recommitment order was signed. Also on that date, Ellman moved to stay enforcement of the October 19, 1992 recommitment order, the January 13, 1993 dismissal of his habeas petition, and the January 14, 1993 recommitment order, pending determination of his appeals therefrom. On March 12, 1993, the state Appellate Division denied Ellman's motion for a stay and dismissed, on its own motion, the appeal from the purported order dated October 19, 1992, stating that the October order was merely a decision, which is not appealable. The New York Court of Appeals declined to hear Ellman's appeal.

On February 2, 1993, Ellman filed an appeal challenging the January 13, 1993 dismissal of his habeas petition and the January 14, 1993 recommitment order, both then being properly signed orders of the state trial court and appealable as such. Finally, Ellman had perfected his state appeal. Nevertheless, after filing this federal habeas petition in the United States District Court for the Southern District of New York, Ellman chose not to pursue his state appeal and requested the state Appellate Division to allow him to withdraw the appeal. On May 21, 1993, the state Appellate Division granted Ellman's request. In the meantime, the state trial court signed another recommitment order for Ellman's continued civil contempt.

Ellman's federal habeas petition alleged that his continued incarceration for civil contempt violated his due process rights under

the Fifth and Fourteenth Amendments of the United States Constitution. On April 16, 1993, the district court granted Ellman bail. After hearing arguments on the exhaustion issue, the district court converted the state's motion to dismiss into a motion and cross-motion for summary judgment on the ground "that the procedural issue of exhaustion of remedies [was] inextricably intertwined with the merits" of the petition. On October 12, 1993, the district court granted Ellman's cross-motion for summary judgment and issued a writ of habeas corpus, having found that Ellman had exhausted his state court remedies and that, even if he had not, he would be excused from the exhaustion requirement based upon the circumstances of the proceedings in the state court. The district court also found for Ellman on the merits. This appeal followed.

## II.

On appeal, the state argues that the district court erred in finding that Ellman had exhausted his state court remedies and in its alternative finding that the available state court remedies were ineffective to protect Ellman's rights. We agree with the state and, therefore, need not reach the merits of Ellman's habeas petition.

■ Under 28 U.S.C. § 2254(b), before a court can address the merits of any constitutional issue raised in a petition for a writ of habeas corpus, it must find that the petitioner has "exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the [petitioner]." Where state law affords petitioner a right to raise his claim "by any available procedure," and the claim is not raised, it cannot be deemed to have been exhausted. *Id.* § 2254(c). "[I]t is not sufficient merely that the [petitioner] has been through the state courts." *Picard v. Connor,* 404 U.S. 270, 275–76, 92 S.Ct. 509, 511–12, 30 L.Ed.2d 438 (1971). Rather, the petitioner's claims must be fairly presented so that the state has the opportunity to correct any alleged constitutional violations. *Id.* at 276, 92 S.Ct. at 512.

■ The federal habeas corpus exhaustion requirement is grounded in principles of federal-state comity. *See Coleman v. Thompson,* 501 U.S. 722, 731, 111 S.Ct. 2546, 2554, 115 L.Ed.2d 640 (1991) (discussing adequate and independent state ground doctrine as it relates to the federal habeas exhaustion requirement). It provides the state courts with the first opportunity to correct potential constitutional violations before the federal courts intervene. *Id.* This principle is just as significant in civil contempt proceedings as it is in other contexts. *See United States ex rel. Goodman v. Kehl,* 456 F.2d 863, 869 (2d Cir.1972) ("considerations of federal-state comity that militate against federal court intervention, by way of habeas corpus," apply with equal force in the context of civil contempt proceedings). Moreover, a petitioner who procedurally defaults on his state court remedies is barred from obtaining federal habeas relief, unless he can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750, 111 S.Ct. at 2564.

■ In this case, the district court found that Ellman had exhausted his state law remedies because of the "tortured history" of Ellman's efforts to have his claims heard in the state appellate court and the failure of the state trial court to issue an appealable order. The court, however, failed to consider that Ellman, after missing several opportunities to perfect a state appeal, voluntarily withdrew his state appeal for no apparent reason. While the missed opportunities alone may have operated to bar Ellman's federal habeas petition, his voluntary withdrawal clearly deprived the state courts of the opportunity to hear his constitutional claims and thus barred federal relief. We will address the district court's findings at each phase of the state proceedings.

Following his incarceration, Ellman brought a state habeas action on September 24, 1992, in which he alleged that his incarceration for civil contempt violated his due process rights under the United States Con-

stitution. This state habeas petition fairly presented Ellman's claims to the state trial court. The state trial court dismissed the writ on September 28, 1992; no order to this effect was signed, however, until January 13, 1993. Although Ellman attempts to lay the blame for the lack of an appealable order on the trial court, the record indicates that Ellman's attorneys could have prepared the order and submitted it for the court's signature. Further, sometime between October and January, the state trial court informed Ellman's attorneys that it had not received the order, but the attorneys still failed to submit one. Their failure to submit an order is contrary to the settled practice in New York. See N.Y.Uniform Civ.R.Sup.Ct. and County Ct. § 202.48 (providing that when the court requests a party to submit an order, such order must be submitted within sixty days). Therefore, Ellman could have presented his claim to the state Appellate Division in a timely fashion if his attorneys only had submitted an appealable order. Unfortunately, his attorneys neglected the opportunity, and the trial court had to draft and sign its own order on January 13, 1993.

█ In October of 1992, while waiting for someone to submit an appealable order for his habeas petition, Ellman, acting *pro se,* brought an article 78 proceeding before the state Appellate Division requesting a writ of prohibition. The district court concluded that this writ of prohibition had fairly presented Ellman's constitutional claims to the state court. We disagree.

█ The writ of prohibition in New York state is an extraordinary remedy that is available only as a matter of judicial discretion and never as of right. See La Rocca v. Lane, 37 N.Y.2d 575, 578, 376 N.Y.S.2d 93, 97, 338 N.E.2d 606, 609 (1975), cert. denied, 424 U.S. 968, 96 S.Ct. 1464, 47 L.Ed.2d 734 (1976); see generally David D. Siegal, New York Practice § 559, at 876 (2d ed. 1991). In this case, the state Appellate Division denied the writ of prohibition, ruling that there were other remedies available to Ellman. The Appellate Division therefore never reached the merits of Ellman's claim, but rather denied the writ as a matter of discretion. The submission of claims to the state court on discretionary review does not automatically constitute the fair presentation of petitioner's claims. Only where the state court exercised its discretion and ruled on the merits will the exhaustion requirement be satisfied in this context. Castille v. Peoples, 489 U.S. 346, 351, 109 S.Ct. 1056, 1059, 103 L.Ed.2d 380 (1989). In ruling that other remedies were available to Ellman, the state Appellate Division was most likely referring to an appeal of Ellman's habeas petition. In any event, the Appellate Division never considered the merits of Ellman's constitutional claims, and, therefore, these claims were not exhausted within the meaning of 28 U.S.C. § 2254.

Next, Ellman attempted to appeal the October 19 "so ordered" transcript recommitting him for civil contempt. The record clearly indicates that counsel for Ellman knew that Ellman would need a signed order from the court to appeal the recommitment order. While the judge did not request Ellman's counsel to prepare an order at that time, nothing in the record indicates that Ellman's counsel was prohibited from presenting an order to the court for signature. Therefore, Ellman could have taken further action to have his constitutional claims fairly presented to the state Appellate Division and failed to do so.

All these errors aside, Ellman clearly failed to exhaust his state remedies by withdrawing his state appeal. In February of 1993, Ellman had finally perfected an appeal that would have fairly presented his constitutional claims to the state Appellate Division. For no apparent reason, aside from pursuing his federal habeas petition, Ellman voluntarily withdrew this appeal. The failure to pursue an appeal in the state courts results in a procedural bar to federal habeas relief unless the petitioner can show both cause for failing to bring the claim and actual prejudice from the failure to consider his federal claims. Coleman, 501 U.S. at 750, 111 S.Ct. at 2564. Here, Ellman had a perfected appeal pending in state court. His decision to withdraw that appeal simply does not constitute cause for failure to bring the claim, nor can he demonstrate prejudice from the failure to consider it. Ellman's voluntary withdrawal of his

state appeal cannot satisfy the federal habeas exhaustion requirement.

The district court also found, in the alternative, that even if Ellman had not exhausted his state remedies, he was excused from the exhaustion requirement. The court found that in this case the remedy available in the state court was ineffective to protect Ellman's rights. We disagree.

An exception to the exhaustion requirement may be made "*only if* there is *no opportunity* to obtain redress in state court or if the [state] corrective process is *so clearly deficient* as to render *futile* any effort to obtain relief." *Duckworth v. Serrano,* 454 U.S. 1, 3, 102 S.Ct. 18, 18, 70 L.Ed.2d 1 (1981) (emphasis added). The district court viewed the state procedure as ineffective to remedy the repetitive ninety-day recommitment orders. Of course, if Ellman properly had presented his constitutional issues to the state Appellate Division on either his original commitment order or any one of the subsequent recommitment orders, and the state court refused to hear his claims, the district court's view may have been correct. *See United States ex rel. Stevens v. McCloskey,* 345 F.2d 305, 308 (2d Cir.1965) (ruling that petitioner, by appealing his first contempt conviction, had satisfied the exhaustion requirement for his third conviction concerning the same issues presented to the state court), *rev'd on other grounds sub nom. Stevens v. Marks,* 383 U.S. 234, 86 S.Ct. 788, 15 L.Ed.2d 724 (1966). However, in this case, Ellman never properly presented his constitutional claims to the state appellate court. He never directly appealed the July, 1992 civil contempt adjudication, opting instead to pursue a state habeas petition. This state petition was dismissed in September, but the appeal could not be taken until January. The delays in Ellman's appeals were not the result of repetitive recommitment orders, but were caused, at least in part, by Ellman's attorneys' failure to submit orders to the court. The state remedies available were not ineffective and simple compliance with state procedure would have avoided much of the delay.

The district court also found that the "procedural obstacles" thrown in Ellman's way were not his fault, but were the fault of the state courts or the state Attorney General. A careful review of the record, however, discloses that these "procedural obstacles" were not obstacles but were reasonable procedural requirements. Nothing in the record suggests that Ellman was precluded from submitting an order either for the dismissal of his state habeas claim or for the October recommitment order. Ellman's counsel knew that an order was required to pursue the appeal. Yet, Ellman and his counsel failed to take advantage of the available procedures. Ellman's own failure to utilize the state process cannot render that process "so clearly deficient as to render futile any effort to obtain relief," *Duckworth,* 454 U.S. at 3, 102 S.Ct. at 18.

### III.

For the foregoing reasons, the judgment of the district court is reversed, and this case is remanded to the district court with instructions to dismiss the petition for a writ of habeas corpus for failure to exhaust state court remedies, pursuant to 28 U.S.C. § 2254.