Robert Johan RICHTER, Petitioner,

v.

Christopher ARTUZ, Superintendent, Greenhaven Correctional Facility, Respondent.

No. 97 Civ. 3176 BDP.

United States District Court, S.D. New York.

Nov. 18, 1999.

Robert Johan Richter, Stornville, NY, plaintiff pro se.

Kevin Wright, Putnam County District Attorney's Office, Carmel, NY, for defendant.

## MEMORANDUM DECISION AND ORDER

BARRINGTON D. PARKER, Jr., District Judge.

Petitioner Robert J. Richter, proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus challenging his conviction after trial in Putnam, New York County Court in March 1994 for Second Degree Murder. Richter was sentenced to an indeterminate term of 25 years to life imprisonment. Richter appealed to the Appellate Division, Second Department which modified on the law Petitioner's Judgment of Conviction by deleting certain provisions directing payment of a mandatory monetary surcharge. Except as modified, the Appellate Division unanimously affirmed the conviction. *People v.Richter*, 223 A.D.2d 734, 637 N.Y.S.2d 206 (2d Dep't 1996). Leave to appeal was denied by the New York Court of Appeals. *See People v. Richter*, 88 N.Y.2d 852, 644 N.Y.S.2d 698, 667 N.E.2d 348 (1996).

Petitioner asserts eight grounds for relief: (1) his confession was coerced; (2) the trial judge refused to instruct the jury on excusable homicide; (3) the trial judge improperly mentioned the "cost of deliberations" to the jury; (4) the trial judge improperly failed to instruct the jury to ac-

quit if they had reasonable doubt as to the voluntariness of the confession; (5) the prosecution failed to present any evidence of recklessness and failed to prove Petitioner's guilt; (6) the prosecution used irrelevant evidence to prejudice the jury and shift the burden of proof onto Petitioner by introducing testimony that Petitioner lived in a cave; (7) the prosecution and trial judge improperly told the jury that their function is to "search for the truth," and (8) the prosecution improperly told the jury that they should convict Petitioner if they believed the police testimony.

The Petition was referred to the Honorable Lisa M. Smith, United States Magistrate Judge, for a Report and Recommendation. Judge Smith filed a Report and Recommendation dated November 24, 1998 recommending that the Petition be dismissed. Petitioner filed timely objections. Consequently, the Magistrate's Report is reviewed *de novo*. Familiarity with that Report is assumed.

Judge Smith concluded, as does this Court, that Petitioner's first, second, fifth, sixth and seventh claims are exhausted because they were presented to both the Appellate Division and to the New York Court of Appeals in largely the same constitutional terms employed here. However, Petitioner's third, fourth and eighth claims were not exhausted. Therefore they are now defaulted and procedurally barred from review. *See Coleman v. Thompson*, 501 U.S. 722, 735, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Our review of the record leads to the conclusion that Petitioner has not demonstrated the requisite cause or prejudice necessary for relief from the default. *Murray v. Carrier*, 477 U.S. 478, 489, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

Turning to the properly exhausted claims, Richter's first claim is that his confession was unlawfully coerced. The Supreme Court has held that "the ultimate question, whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution is a matter for independent federal determination." *Miller v. Fenton*, 474 U.S. 104, 112, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). However, a state court's determinations of "subsidiary questions such as the length and circumstances of the interrogation, the defendant's prior experience with the legal process, and familiarity with the Miranda warnings" are considered questions of fact, which are entitled to a presumption of correctness under 28 U.S.C. § 2254(d). *Id.* at 117, 106 S.Ct. 445. The Magistrate concluded, as does this Court, that this presumption has not been eroded. Our review of the record, taken as a whole, supports the conclusion that Petitioner's confession was not coerced.

Petitioner's second and seventh claims test the trial court's refusal to instruct the jury as to excusable homicide and the improper use by both the trial judge and the prosecutor of the term "search for truth" at various stages of the trial. Judge Smith determined, as does this Court, that neither of these claims has merit. The trial judge specifically concluded that the facts of the case did not fit within the parameters of an excusable homicide charge. Moreover, nothing in the record supports the conclusion that the failure to include that charge constituted an error of constitutional magnitude—one that offended some right guaranteed by the Fourteenth Amendment to the United States Constitution. In addition, our reading of the trial transcript reflects that the phrase "search for truth" was used by the trial court during initial instructions to the jury, prior to opening statements, and once during the final charge to the jury. The use of these terms, in the context of the entire trial, did not implicate constitutional guarantees and the jury was clearly instructed at a number of junctures about the necessity of considering only evidence adduced during the trial and the state's burden of proof beyond a reasonable doubt on each element of the offense.

Petitioner's fifth ground for relief is that the prosecution failed to adduce sufficient evidence of defendant's guilt. On the basis of the record, it cannot be said that no rational trier of fact could have found beyond a reasonable doubt the essential elements of the crime for which Richter was charged. We conclude that this ground, like Richter's remaining ones, are without merit.

The Report and Recommendation of the Magistrate is adopted. The objections to that Report are overruled. Richter has not made a substantial showing of the violation of his constitutional rights; consequently a Certificate of Appealability will not issue. *See* 28 U.S.C. § 2253, as amended by the Antiterrorism and Effective Death Penalty Act of 1996. *See generally Lozada v. United States,* 107 F.3d 1011 (2d Cir.1997). This Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith. The Petition is dismissed. The Clerk of the Court is directed to enter a final judgment in favor of the Respondent.

## REPORT AND RECOMMENDATION

LISA MARGARET SMITH, United States Magistrate Judge.

Petitioner Robert Johan Richter ("petitioner"), proceeding *pro se,* has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction after trial for Second Degree Murder (N.Y. Penal Law § 125.25(2)). Although petitioner relies on four grounds in his petition, he actually articulates eight claims: (1) that his confession to the crime was obtained by coercive means; (2) that the trial judge refused to instruct the jury on excusable homicide; (3) that the trial judge improperly mentioned the "cost of deliberations" to the jury; (4) that the trial judge improperly failed to instruct the jury to acquit if they had reasonable doubt as to the voluntariness of the confession; (5) that the prosecution failed to present any evidence of recklessness and failed to

prove Petitioner's guilt; (6) that the prosecution used irrelevant evidence to prejudice the jury and shift the burden of proof onto Petitioner by introducing testimony that Petitioner lived in a cave; (7) that the prosecution and trial judge improperly told the jury that their function is to "search for the truth," and (8) that the prosecution improperly told the jury that they should convict petitioner if they believed the police.

This habeas corpus petition was referred to me, pursuant to your Order of Reference, for a Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1)(B) and (c) and Rule 72.1(d) of the Southern District of New York Rules for Proceedings before Magistrate Judges. For the reasons that follow, I conclude, and respectfully recommend, that the petition for a writ of habeas corpus should be denied and the action should be dismissed in its entirety.

## BACKGROUND

### A. Facts

#### 1. The Crime

On the night of June 22, 1993, at a wooded location, and allegedly at the victim's request, petitioner tied a pillow encased belt around the neck of the victim, Germaine Ross. Petitioner pulled the belt tight for approximately thirty seconds, until he heard the victim gurgle and her hands dropped to her sides. At that point, petitioner walked away and left the victim alone for about five minutes. When he returned to her location, he observed her face to be discolored and attempted cardiopulmonary resuscitation. When his efforts failed, he placed the body in a shallow grave and, later that night, moved the body to a second grave site along side the Taconic State Parkway.

Petitioner was subsequently arrested and indicted on one count of Murder in the Second Degree.

## 2. The Pre–Trial Hearing

A suppression hearing was held on December 16, 20, 21, 23 and 27, 1993[1], before the Honorable William B. Braatz, Putnam County Court Judge. That hearing addressed issues relating to the voluntariness and admissibility of the statements petitioner made to the New York State police on June 28 and 29, 1993.[2] At this hearing, the following facts were established:

New York State Police Investigators Matthew LasPisa and Albert Swansen spoke with petitioner in the early morning hours of June 28, 1998, at the Putnam Valley Police Department. They read petitioner his Miranda rights and petitioner agreed to speak with the Investigators regarding the disappearance of his girlfriend, Germaine Ross. (SH2 130–31.) Petitioner stated that he had been with Germaine on the night of June 22, into the morning of June 23. (SH2 6, 136–37.) Petitioner stated that he and the victim had an argument on the morning of June 23, and that he had not seen her since that time. (SH2 6, 137.)

Petitioner left the police station at approximately 3:30 a.m. on June 28, and the Investigators next contacted petitioner at about 6:00 p.m. on June 28, 1993, at petitioner's father's home. (SH2 8, 142–43.) Investigator LasPisa, together with Investigator Swansen, brought petitioner to the state police barracks in Poughkeepsie in order to question him further. (SH2 8–9, 144.) They provided petitioner with food and drink on the way to the barracks, and introduced petitioner to Investigator Salm-

on when they arrived at the barracks. (SH2 9–10, 144–45.)

Investigator Thomas P. Salmon met with petitioner on the evening of June 28, 1993, for the purpose of conducting a polygraph examination of petitioner. (SH1 9.) He asked petitioner if he was willing to take a polygraph, and provided him with written information regarding his rights with respect to polygraph examinations. (SH1 9–10.) He administered petitioner's Miranda warnings and petitioner signed a form indicating that he knew and understood his rights and that he was consenting to the polygraph examination.[3] (SH1 13–17.) Petitioner then relayed the events surrounding the victim's disappearance to Investigator Salmon. After the examination, Investigator Salmon communicated to petitioner that he did not think that petitioner was being truthful with respect to certain questions. (SH1 45–47.) Investigator Salmon also informed petitioner that the victim's body had been found across the parkway from his campsite. (SH1 49.) At one point during the questioning, petitioner placed his head in his hands, covering his face, and Investigator Salmon pulled petitioner's hands away from his face and said something to the effect of "look at me" or "be a manstop crying." (SH1 125; SH3 77.) After Investigator Salmon concluded the polygraph examination, Investigators Swansen and LasPisa resumed questioning petitioner. (SH1 51.)

The Investigators inquired as to whether petitioner wanted anything to eat or drink. (SH2 15, 147.) Investigator LasPi-

---

1. All references to the suppression hearing transcript are preceded by the letters SH. As the pagination of the respective dates is not consecutive, but begins anew on each date, the transcript from December 16, 1993 is referred to as SH1, December 20, 1993 is SH2, December 21 is SH3 and December 23 and 27, 1993, and January 6, 1994 are SH4.

2. In addition to the *Huntley* suppression hearing, a *Sandoval* hearing was held on February 10, 1994. As none of petitioner's claims relate to the *Sandoval* hearing, there is no need to discuss those proceedings here.

3. All of the Investigators testified that they did not see petitioner write anything on the polygraph forms, other than his consent to take the polygraph examination and his acknowledgment of his Miranda rights. (SH1 59; SH2 90; SH3 75–76.) Investigator Salmon testified that he did not see any of petitioner's handwriting requesting an attorney on the polygraph forms until July 1, 1993. (SH1 58, 104.)

sa reminded petitioner of his rights as they had been read to him by Investigator Salmon, but did not re-administer them. (SH2 15, 147.) They then questioned petitioner again about the events surrounding Germaine Ross's death, concentrating on the areas in which petitioner's statements during the polygraph examination differed from the statements he had given earlier. (SH2 15, 146.) They also showed petitioner pictures of the crime scene. (SH2 22.) At that time, petitioner relayed to them the circumstances of Germaine's death. (SH2 16–23, 148–50.) Petitioner stated that, at her request, he choked the victim with a bed sheet. (SH2 17, 149.) He later admitted that he had choked her with a belt, not a bed sheet. (SH2 22, 154.)

Petitioner agreed to give a written statement. (SH2 25, 163.) He was given a beverage, taken to the restroom, and was again read his Miranda rights prior to giving the written statement. (SH2 25; SH3 4.) Petitioner acknowledged, in writing, that he had been advised of his rights and that he wanted to provide a written statement. (SH2 25–6; SH3 5.) Petitioner also signed the statement after it had been typed. (SH3 6.)

On January 6, 1994, Judge Braatz issued his decision denying the motion to suppress in all respects. (SH4 225.) He found that petitioner was read his Miranda warnings, indicated that he understood his rights and agreed to speak with Investigators Swansen and LasPisa on the morning of June 28, 1993. (SH4 212.) He found that the questioning lasted from approximately 1:00 a.m. to 3:00 a.m., petitioner was allowed to leave at 3:30 a.m., and petitioner did not articulate a request for an attorney during that period. (SH4 213.) Judge Braatz also found that on the evening of June 28, 1993, petitioner accompanied Investigators Swansen and LasPisa back to the State Police Barracks in order to give a written statement and to look at mug shots, the request to look at mug shots being a ruse. (SH4 215.) The judge further found that once at the police bar-

racks, petitioner was introduced to Investigator Salmon, was asked to take a polygraph exam, apparently read pamphlets regarding the exam, and consented to the exam. (SH4 218.) The polygraph exam lasted from 9:04 p.m. until 10:15 p.m. (SH4 223.) Investigator LasPisa again questioned petitioner, after reminding him of his rights without repeating them, and, by approximately 1:30 a.m. on the morning of June 29, petitioner confessed, and was asked to put the statement in writing. (SH4 219.) The judge further found that petitioner made notations on the polygraph forms, outside the presence of the investigators, alleging he had been denied his right to counsel, but that he had never verbalized his alleged request for counsel. (SH4 221.)

Judge Braatz specifically noted that petitioner was "given food, something to drink, was allowed to use the bathroom, was later offered food and something to drink and use of the bathroom … [t]here is no evidence of threats or physical violence … the questioning was intermittent and almost two hours were spent in reducing the oral statement to writing." (SH4 223–24.) Judge Braatz concluded that petitioner was adequately informed of his Miranda rights, that he understood them, and that he waived them. (SH4 224.) The judge also concluded that the questioning of petitioner on June 28 and June 29, was not impermissibly coercive. (SH4 224.)

### 3.  The Trial

The petitioner was charged with one count of Murder in the Second Degree, in violation of New York Penal Law § 125.25(2). In February and March, 1994, a trial on the charge proceeded before Judge Braatz and a jury. On March 23, 1994, petitioner was convicted of the charge. On June 1, 1994, Judge Braatz sentenced petitioner to the maximum sentence, twenty-five years to life imprisonment.

At trial, the following facts were established [4]:

The victim, Germaine Ross, was last seen on the evening of June 22, 1993, at a barbecue in her family's backyard. Late that evening, she left the house with petitioner, Robert J. Richter. At that time, they proceeded to a campsite where petitioner was staying, a short distance through the woods. The victim stayed the night at that location with petitioner. On the morning of June 23, 1993, the victim and petitioner awoke, had sexual intercourse, and then had an argument. At some point thereafter, and allegedly at the victim's request, petitioner placed a belt around the victim's neck and pulled it tight for approximately thirty seconds. At the point when the victim's hands fell to her sides and she made a rasping sound, petitioner walked away from the area. Petitioner returned approximately five minutes later, and found the victim blue in color and not breathing. At that time, petitioner attempted cardio-pulmonary resuscitation.

After his attempts had no effect, he placed the victim's body in a shallow grave and covered her with leaves and other debris. Petitioner then hitchhiked to the Town of Peekskill where he had lunch at the Salvation Army, laundered some clothing—including the sheets the victim had soiled upon her death—and then wrote a letter to the victim at the Peekskill library. Later, on the afternoon of June 23, 1993, petitioner returned to his campsite and placed the letter in an envelope marked, "Private For Germaine Only", and left it in a book at the campsite. That night, petitioner uncovered the victim's body and transported it across the Taconic Parkway. Petitioner waited until dawn and then went to his mother's house in upstate New York for his sister's graduation party.

After repeated searches for the victim proved fruitless, the victim's mother and step-father called petitioner at his mother's house to see if he knew the victim's whereabouts. Additionally, the Putnam Valley Police also notified petitioner's father that they wanted to speak with petitioner when he returned to the area. On June 27, 1993, when petitioner returned to the Putnam Valley area, petitioner's father brought him to the Putnam Valley Police Station where petitioner was questioned by Investigators Matthew LasPisa and Albert Swansen of the New York State Police. Early in the afternoon of June 28, 1993, the victim's body was recovered in the woods off the Taconic Parkway. The victim had been buried under several rocks from a retaining wall, in the shelter of the well of a large tree. Later, in the early evening of June 28, 1993, Investigators LasPisa and Albert Swansen drove to petitioner's father's home in order to request that petitioner return with them to the state police barracks and give a written statement of the last time he had seen the victim. The petitioner was not told at this time that the victim's body had been recovered and he agreed to accompany the investigators. After arriving at the barracks, petitioner gave the statement concerning the circumstances of the victim's death.

A unanimous jury convicted petitioner of Second Degree Murder (Depraved Indifference Murder). Petitioner was sentenced to twenty-five (25) years to life imprisonment and directed to pay a mandatory surcharge of $150, and $2,000 in restitution to the Crime Victim's Board in response to a claim filed by the victim's father.

### 4. *Post Conviction Proceedings*

Petitioner filed an appeal with the New York State Supreme Court, Appellate Di-

---

**4.** This recitation of facts is taken from the trial record, but for the sake of brevity does not contain specific references to the transcript, except where the transcript is quoted. Transcript references are made in the various points discussed *infra,* as necessary. All references to the trial transcript are preceded by the letter T.

vision, Second Department. Petitioner appealed on six grounds, including: failure to prove guilt beyond a reasonable doubt, use of coerced confession, harsh and excessive sentence, failure to instruct jury on excusable homicide, irrelevant evidence allowed to prejudice the jury, and improper jury instructions by the prosecutor and trial judge to "search for the truth." The Appellate Division held that the jury could have reasonably concluded based on the weight of the evidence that petitioner was guilty of the crime charged. The court also stated that the indeterminate sentence of 25 years to life imprisonment was not harsh or excessive, but did find that the imposition of a mandatory surcharge as well as restitution was improper and instructed the trial court to conduct a hearing to determine the proper amount to be paid.[5] As to the remainder of petitioner's appellate claims, the court found that they were either unpreserved for appellate review, without merit, or did not warrant reversal in light of the overwhelming evidence of guilt. *People v. Richter*, 223 A.D.2d 734, 637 N.Y.S.2d 206 (2d Dep't 1996).

Petitioner filed an application for leave to appeal to the New York State Court of Appeals incorporating all the grounds enumerated in his Appellate Division brief. The Court of Appeals summarily rejected petitioner's application. *People v. Richter*, 88 N.Y.2d 852, 667 N.E.2d 348, 644 N.Y.S.2d 698 (1996). Petitioner then filed his petition for a writ of habeas corpus in this Court.

## *DISCUSSION*

### A. *Standard of Review*

"The habeas corpus statute permits a federal court to entertain a petition from a state prisoner 'only on the ground that he [or she] is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wright v. West*, 505 U.S. 277, 285, 112 S.Ct. 2482, 120 L.Ed.2d 225

(1992) (quoting 28 U.S.C. § 2254(a)). Federal habeas corpus review of state proceedings is therefore limited to errors of constitutional magnitude. *Alvarez v. Scully*, 833 F.Supp. 1000, 1005 (S.D.N.Y.1993). An erroneous evidentiary ruling does not automatically rise to the level of constitutional magnitude, thus a court will only grant habeas relief where the petitioner can show that such error deprived him or her of a fundamentally fair trial. *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir.1983), *cert. denied*, 464 U.S. 1000, 104 S.Ct. 503, 78 L.Ed.2d 694 (1983).

Petitioner is proceeding *pro se* in this federal habeas petition. Generally, "[t]he complaint of a *pro se* litigant is to be liberally construed in his [or her] favor." *Simmons v. Abruzzo*, 49 F.3d 83, 87 (2d Cir.1995) (citing *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam)). "[T]he district court "should review habeas petitions with a lenient eye, allowing borderline cases to proceed." *Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir.1983).

### B. *Timeliness*

Respondent argues that the petition should be dismissed as untimely. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one year statute of limitations for the filing of a habeas corpus petition seeking relief from a state court conviction. Under this law, the filing of a federal habeas petition must be done within one year from the date of the final judgment of conviction in state court. Judgment of conviction becomes final ninety days after the date on which the Court of Appeals denies leave to appeal, that is, at the conclusion of the period during which petitioner could have sought certiorari in the United States Supreme Court. *Hughes v. Irvin*, 967 F.Supp. 775, 778 (E.D.N.Y.1997). In this case, the New York Court of Appeals denied petitioner's application for leave to

---

**5.** There is nothing in the record about whether such a hearing was ever held.

appeal on April 4, 1996. Thus, his judgment of conviction became final ninety days later, on July 4, 1996. Under the AEDPA, the last date for timely filing of Richter's petition was July 4, 1997.

■ A prisoner's petition for a writ of habeas corpus is deemed filed when the petitioner delivers it to prison officials. *Houston v. Lack,* 487 U.S. 266, 273, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988). Richter signed his petition on March 21, 1997. Petitioner delivered his petition to prison officials some time between March 21, 1997 and April 21, 1997, the date on which the petition arrived at the court. Therefore, I conclude, and respectfully recommend that the petition was timely filed within one year from the final judgment of conviction as required by the AEDPA.

## C. Exhaustion

A habeas corpus petition may not be granted unless the petitioner has "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b); *see also Picard v. Connor,* 404 U.S. 270, 275–276, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Ellman v. Davis,* 42 F.3d 144, 147 (2d Cir. 1994), *cert. denied,* 515 U.S. 1118, 115 S.Ct. 2269, 132 L.Ed.2d 275 (1995). The exhaustion requirement applies to each claim presented. *See Pitchess v. Davis,* 421 U.S. 482, 95 S.Ct. 1748, 44 L.Ed.2d 317 (1975). The exhaustion requirement ensures that "the state courts have an opportunity to consider and correct any violations of their prisoners' federal constitutional rights." *Camarano v. Irvin,* 902 F.Supp. 358, 364 (S.D.N.Y.1994), *aff'd,* 122 F.3d 1055 (2d Cir.1995) (citing *Picard,* 404 U.S. at 275); *see also Daye v. Attorney General of New York,* 696 F.2d 186 (2d Cir.1982). The petitioner satisfies the exhaustion requirement when he or she provides the state courts with a fair opportunity to apply constitutional principles to the claims. *See Anderson v. Harless,* 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982). "In order to have fairly presented his [or her] federal claims to the state courts the petitioner must have informed the state court of both the factual and the legal premises of the claim he [or she] asserts in federal court." *Daye,* 696 F.2d at 191; *accord Lynes v. Mitchell,* 894 F.Supp. 119, 122 (S.D.N.Y. 1995), *aff'd,* 104 F.3d 355 (2d Cir.1996).

■ A habeas petitioner need not cite "chapter and verse" of the constitution in order to satisfy the exhaustion requirement, but may rely on federal and state cases employing a constitutional analysis. *See Daye,* 696 F.2d at 194; *see also Levine v. Commissioner of Correctional Services,* 44 F.3d 121, 124 (2d Cir.1995). Additionally, the petitioner may assert the claim "in terms that 'call to mind a specific right protected by the Constitution,'" or allege "facts that fall 'well within the mainstream of constitutional litigation.'" *Levine,* 44 F.3d at 124 (quoting *Daye,* 696 F.2d at 194). Moreover, merely citing the specific constitutional provision relied upon in a point heading in a brief submitted to a state court will also satisfy the exhaustion requirement. *See Daye,* 696 F.2d at 192; *see also Reid v. Senkowski,* 961 F.2d 374, 376 (2d Cir.1992). Upon examination of the record, I conclude and respectfully recommend, that petitioner's first, second, fifth, sixth and seventh claims are exhausted because they were presented to the Appellate Division and Court of Appeals in largely the same terms as presented here and clearly apprised those courts of the constitutional issues involved.

However, petitioner's third, fourth and eighth claims are not exhausted in those terms because they have never been presented to the state courts, on direct appeal or otherwise. In *Rose v. Lundy,* 455 U.S. 509, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), the Supreme Court concluded that a rule that prisoners must completely exhaust all claims in state courts before presenting them to the federal courts "promotes comity and does not reasonably impair the prisoner's right to relief[.]" The Court went on to hold that "a district court must dismiss habeas petitions containing both unexhausted and exhausted

claims." *Id.* That bright line rule, however, was altered by the amendments to the statute resulting from the AEDPA. Pub. L.No. 104–132, 110 Stat. 1214 (1994 & West Supp.1997). The AEDPA specifically requires exhaustion unless there is no available corrective process in the state, or circumstances exist which render such process ineffective, but it also permits a federal court to consider and deny a habeas petition on the merits, even in the absence of exhaustion. 28 U.S.C. § 2254(b)(1) and (2).

■ In this case, the only further corrective process consists of a motion filed pursuant to § 440.10 of the New York Criminal Procedure Law. This avenue cannot be said to be meaningful with respect to the third, fourth and eighth claims because the issues raised in those claims appear on the trial record, should have been raised on direct appeal, and therefore would be barred from review by the state court at this stage.[6] *See Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Bossett v. Walker,* 41 F.3d 825, 828–29 (2d Cir.1994). Thus, I conclude, and respectfully recommend that the third, fourth and eighth claims have been exhausted for purposes of habeas review. However, as noted below, the same limitations which prevent further review in state court act to procedurally bar these claims from review in a habeas petition. *See Coleman v. Thompson,* 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

### D.   Procedural Bar

■■ A number of the claims asserted by petitioner are procedurally barred from review by this Court. Where there is an independent and adequate state ground for the court decision, federal habeas review is barred. *See Harris v. Reed,* 489 U.S. 255, 260–62, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *see also Bacchi v. Senkowski,* 884

F.Supp. 724, 731 (E.D.N.Y.1995), *aff'd,* 101 F.3d 683 (2d Cir.), *cert. denied,* 519 U.S. 894, 117 S.Ct. 237, 136 L.Ed.2d 167 (1996). A clear and express statement by the last court to render a judgment that such judgment rests on a state procedural bar triggers the procedural bar. *See Harris,* 489 U.S. at 263; *see also Rollins v. Leonardo,* 938 F.2d 380, 381 (2d Cir.1991), *cert. denied,* 502 U.S. 1062, 112 S.Ct. 944, 117 L.Ed.2d 114 (1992). Silent affirmance by the Appellate Division "in the face of the State's argument that the claim was both procedurally barred and meritless should be presumed to rest on state grounds." *Epps v. Commissioner of Correctional Services,* 13 F.3d 615, 618 (2d Cir.), *cert. denied,* 511 U.S. 1023, 114 S.Ct. 1409, 128 L.Ed.2d 81 (1994). A state court's finding that issues are procedurally barred "in addition to finding that they were, in any event, without merit" (*Velasquez v. Leonardo,* 898 F.2d 7, 9 (2d Cir.1990)), also bars a habeas court from reaching the merits of the claims. *See id.*

Here, the third claim, regarding improper comments made to the jury, the fourth claim, regarding failure to give a jury charge on the voluntariness of the confession, and the eighth claim, regarding improper prosecutorial comments, are all procedurally barred from review. The claims were not raised on direct appeal, although they are clearly based on the trial record, and therefore would not be cognizable on collateral review under New York Crim. Proc. Law § 440.10. *See Bossett v. Walker,* 41 F.3d at 828–29. The statutory limitation of post-verdict review following completion of the direct appeal process acts as a procedural bar to further review in this Court, in the absence of a showing of cause and prejudice.

These otherwise procedurally barred claims may receive federal habeas review only if petitioner can establish one of the two limited exceptions to the procedural

---

**6.** If petitioner brought a motion in state court on any of these grounds pursuant to § 440.10 of the New York Criminal Procedure Law,

petitioner would be barred from relief pursuant to § 440.10(2)(c), because he failed to raise the claim on his direct appeal.

default bar. First, the procedural default may be excused if petitioner can show cause for the default in state court and actual prejudice from the alleged constitutional violation. *See Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Gonzalez v. Sullivan,* 934 F.2d 419, 421 (2d Cir.1991). In the alternative, he must show that the failure to consider the claim will result in a fundamental miscarriage of justice because "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496, 106 S.Ct. 2639; *Lebron v. Mann,* 40 F.3d 561, 564 (2d Cir.1994).

■ Petitioner argues that his third claim, regarding the alleged "cost of deliberations" comments, was not raised on appeal because his appellate counsel failed to do so. Insofar as this is an allegation of ineffective assistance of counsel, it fails to establish cause for the default in state court.[7] The United States Supreme Court has stated that "the exhaustion requirement ... generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Murray v. Carrier,* 477 U.S. 478, 489, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). This claim of ineffective assistance of counsel is raised for the first time in this federal habeas petition, and is raised solely in support of the claimed excuse for failing to present another claim below. The claim of ineffective assistance of counsel has never been presented to the state courts. It therefore cannot serve as cause for the procedural default with respect to the third ground of this habeas petition. *See Reyes v. Keane,* 118 F.3d 136, 140 (2d Cir.1997). Because the petitioner has failed to demonstrate cause with respect to the third ground,

there is no need to engage in an analysis of the prejudice prong of the exception. *See Bentley v. Scully,* 851 F.Supp. 586, 604 (S.D.N.Y.), *vacated on other grounds,* 41 F.3d 818 (2d Cir.1994), *cert. denied,* 516 U.S. 1152, 116 S.Ct. 1029, 134 L.Ed.2d 107 (1996); *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).

The petitioner's procedural default may not be excused under the "miscarriage of justice" exception either. Petitioner has made no showing that a "fundamental miscarriage of justice" would occur if this Court did not consider his claims. There is nothing in the record before this Court which would support such a claim, even if one were articulated.

For the above reasons, I conclude, and respectfully recommend, that the third claim, alleging that the trial judge commented to the jury on the "cost of deliberations", the fourth claim, alleging the trial judge improperly failed to instruct the jury that they should acquit the defendant if they found his confession involuntary, and the eighth claim, alleging that the prosecutor improperly told the jury to convict the petitioner if they believed the testimony of the police, are all procedurally barred from consideration by this Court on review of the Petition.

**E.** *Use of Allegedly Coerced Confession First Claim*

■ The petitioner claims, first, that his conviction was obtained, in part, by the use of a coercively-obtained confession. Petitioner claims that he was coerced into confessing because the police failed to inform him that his polygraph examination results were inadmissible in court, the police showed him photographs depicting the condition of the victim's body at the time it was recovered, and the police interrogated him for several hours knowing that he had had little sleep. As support for his claims, Petitioner asserts that every fact contained

---

**7.** It is noted that petitioner fails to assert any grounds as cause for the procedural default

with respect to his fourth and eighth grounds.

in his confession was supplied by the police and no information contained in the confession was unknown to police at the time he made his statement.

The United States Supreme Court has held that "the ultimate question whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution is a matter for independent federal determination." *Miller v. Fenton*, 474 U.S. 104, 112, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). However, state court determinations of "subsidiary questions, such as the length and circumstances of the interrogation, the defendant's prior experience with the legal process, and familiarity with the Miranda warnings" are considered questions of fact, which are entitled to a presumption of correctness under 28 U.S.C. § 2254(d). *Id.* at 117; *see also*, 28 U.S.C. § 2254(d).

Looking at the totality of the circumstances, and in accord with the trial court's decision after the hearing, I conclude that petitioner's confession was obtained in a manner compatible with the requirements of the Constitution. The trial court found that petitioner knew, understood and voluntarily waived his Miranda rights. (SH4 224.) Petitioner read the pamphlet regarding the polygraph examination and freely submitted to the examination. (SH4 218.) Petitioner, while present at the police barracks for a considerable amount of time, was questioned only intermittently and not continuously. (SH4 223–24.) Petitioner was offered and refused food and drink. (SH2 15, 147.) He did not express his desire to leave (as he did the night before), nor did he verbalize a request to speak with an attorney. All of these considerations, taken as a whole, demonstrate that the circumstances surrounding petitioner's confession were not unconstitutionally coercive. Therefore, I conclude, and respectfully recommend, that the first claim of the petition is without merit.

## F. *Improper Jury Instructions Second and Seventh Claims*

▮ In his second ground for this petition, the petitioner claims that the trial court's refusal to instruct the jury as to excusable homicide deprived him of his Constitutional right to a fair trial. In his seventh ground, petitioner claims that the judge and the prosecutor both improperly instructed the jury that their function was to "search for the truth," thereby depriving him of a fair trial. In order for petitioner to establish such a constitutional violation, he must not only establish that the unrequested instruction was inappropriate and that the missing instruction was appropriate; rather, he must establish that the presence or absence of the instructions, individually or as a whole, undermines the constitutional validity of the state court's judgment. As the Supreme Court has stated:

> Before a federal court may overturn a conviction resulting from a state trial in which [a particular] instruction was used, it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment.

> In determining the effect of [an] instruction on the validity of the respondent's conviction, we accept ... the well established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge .... While this does not mean that an instruction by itself may never rise to the level of constitutional error, ... it does recognize that a judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge. Thus not only is the challenged instruction but one of many such instructions, but the process of instruction itself is but one of several com-

ponents of the trial which may result in the judgment of conviction.

*Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973) (citations omitted); *see also Victory v. Bombard,* 570 F.2d 66, 69 n. 3 (2d cir.1978) (errors in jury instructions rarely rise to a constitutional level, citing *Cupp v. Naughten* ).

In this case, a review of the court's instructions to the jury reveals that the instructions given were proper and that the absence of an excusable homicide charge did not undermine the validity of the state court judgment. Judge Braatz specifically found that the circumstances of the case did not fit within the parameters for an excusable homicide charge, stating "[a] reasonable reading of the evidence ... in this case, wouldn't justify that charge." (T 1800.)

■ Additionally, a thorough reading of the entire trial transcript in this case reveals that the phrase "search for the truth" was used on three occasions. The trial judge uttered that phrase once in his initial instructions to the jury, prior to opening statements, and once during his final jury charge. (T 450, 1954.) The prosecutor also used the phrase once in his opening statement, parroting the language used by the judge in the pre-trial instructions to the jury. (T 470.) The context in which these comments were made was one of instructing the jury as to its role as the sole judge of the witnesses' credibility. It was not used in the sense that the jurors were to look outside the parameters of the evidence produced at trial. On the contrary, the jury was clearly instructed to consider only that evidence that had been produced at trial, and nothing else.

Petitioner has not demonstrated how the presence of this phrase or the absence of the excusable homicide instruction has undermined the constitutional validity of his conviction. Therefore, I conclude, and respectfully recommend that Your Honor should conclude, that the constitutional validity of petitioner's conviction has not been undermined by the limited use of the phrase "search for the truth" or by the absence of the excusable homicide instruction, and that the second and seventh grounds for this petition are without merit.

### G. *Failure to Prove Guilt Fifth Claim*

■ As the fifth ground for his petition, petitioner claims that the prosecution failed to present any evidence of recklessness and failed to prove petitioner's guilt. "It is a fundamental tenet of American law that a criminal defendant can only be convicted if the factfinder, normally a jury, finds guilt beyond a reasonable doubt." *Chalmers v. Mitchell,* 73 F.3d 1262, 1266 (2d Cir.1996). A federal court would not disturb " ... a conviction on grounds of legal insufficiency of the evidence at trial if 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Id.* at 1272 (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). All possible inferences that can be drawn from the evidence must be construed in favor of the prosecution. *Maldonado v. Scully,* 86 F.3d 32, 35 (2d Cir.1996); *United States v. Rosa,* 11 F.3d 315, 337 (2d Cir.1993), *cert. denied,* 511 U.S. 1042, 114 S.Ct. 1565, 128 L.Ed.2d 211 (1994). "[A]ssessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal." *Maldonado,* 86 F.3d at 35.

Petitioner was found guilty under New York Penal Law § 125.25(2) by a unanimous jury of his peers. The jury was instructed at length on the functions it was to perform and on the principle of reasonable doubt. From the evidence presented, it cannot be said that no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The jury's finding in this case cannot be said to be irrational. This conclusion was also reached by the Appellate Division on direct appeal. Indeed, an independent review of the evidence present-

ed at trial establishes sufficient proof to support the verdict. Not only did petitioner confess to the crime, but he was the last person seen in the victim's company, and the circumstances pointed to an inference of his guilt. Therefore, I conclude, and respectfully recommend that Your Honor should conclude, that petitioner's fifth ground is without merit.

## H. *Irrelevant Evidence Used to Prejudice Jury Sixth Claim*

In his sixth ground, petitioner claims that the trial court committed reversible error in allowing the prosecution to introduce evidence that petitioner once lived in, or stayed in, a cave. Petitioner claims that the admission of such evidence prejudiced the jury against him and therefore, deprived him of a fair trial. Under both New York and federal law, evidence "is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *People v. Fagan,* 215 A.D.2d 686, 628 N.Y.S.2d 118, 119 (2d Dep't.1995), *appeal denied,* 86 N.Y.2d 794, 632 N.Y.S.2d 507, 656 N.E.2d 606 (1995) (quotation omitted); Fed.R.Evid. 401. "All relevant evidence is admissible unless its admission violates some exclusionary rule." *Dey v. Scully,* 952 F.Supp. 957, 969 (E.D.N.Y.1997) (quotation omitted). Rulings on relevance and admissibility of evidence rest within the trial court's discretion. *Id.* Further, discretionary state court evidentiary rulings normally do not rise to a constitutional level so as to be cognizable in a federal habeas corpus proceeding absent a showing that the error rendered petitioner's trial fundamentally unfair. *Id.* at 971 (quoting *Alvarez v. Scully* 833 F.Supp. 1000, 1005 (S.D.N.Y. 1993)).

It does seem that the location of petitioner's abode was not crucial to the ultimate issue of whether petitioner committed second degree murder with depraved indifference to human life. However, that same information was contained in other items of evidence which were properly admitted and also highly relevant, such as the note petitioner left to the victim. Here, the petitioner has not demonstrated that the admission of evidence that he lived in a cave was so prejudicial as to render his trial fundamentally unfair. Therefore, I conclude, and respectfully recommend, that petitioner's sixth ground is without merit.

### CONCLUSION

For the above stated reasons, it is my conclusion that petitioner's third, fourth and eighth grounds are procedurally barred from review by this Court, and that petitioner's first, second, fifth, sixth and seventh grounds are without merit. I therefore conclude, and respectfully recommend, that the petition for a writ of habeas corpus should be denied, and the action should be dismissed in its entirety.

### NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed.R.Civ.P. 72(b), the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Fed. R.Civ.P. 6(e), or a total of thirteen (13) working days (*see* Fed.R.Civ.P. 6(a)), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Barrington D. Parker, Jr., at the United States District Court, Southern District of New York, United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the said Courthouse. A copy must also be served upon all other parties to the action, and the original objections filed with the Clerk must include an affidavit of such service.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered. Requests for

extensions of time to file objections must be made to Judge Parker.

November 24, 1998.